# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

JOHN FITZGERALD HANSON,

      PETITIONER,

      v.

CHRISTE QUICK, Warden, Oklahoma State Penitentiary;

STEVEN HARPE, Director of the Oklahoma Department of Corrections;

DANON COLBERT, Acting Regional Director, U.S. Department of Justice, Federal Bureau of Prisons; and

WILLIAM W. LOTHROP, Acting Director, U.S. Department of Justice, Federal Bureau of Prisons,

      RESPONDENTS.

Case No. 6:25-cv-00081-RAW-JAR

**FEDERAL RESPONDENTS' MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

Introduction ........................................................................................................... 5

Background .............................................................................................................. 6

Argument ................................................................................................................. 9

    A.    Federal Respondents Do Not Have Custody of Petitioner and Are Not Proper Habeas Respondents. .................................................. 9

    B.    A Decision to Transfer a Federal Prisoner to a State Authority under Section 3623 is not Subject to Judicial Review. ......................................... 10

    C.    Petitioner's Transfer Meets the Statutory Requirements of Section 3623. ...................................................................................................... 14

    D.    Petitioner Has No Due Process Right to Remain in Federal Custody. ....... 19

Conclusion .......................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Armstrong v Salinas*, Civil Action,
No. 6:13-179-KKC, 2014 WL 340399 (E.D.K, Jan. 30, 2014).............................................. 15
*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) ................................................................................................................ 13
*Atkinson v. Hanberry*,
589 F.2d 917 (5th Cir. 1979) ................................................................................................... 12
*BNSF Railway Co. v. United States*,
775 F.3d 743 (5th Cir. 2015) ................................................................................................... 15
*Commonwealth v. McGrath*,
205 N.E.2d 710 (Mass. 1965) .................................................................................................. 12
*Easom v. US Well Servs., Inc.*,
37 F.4th 238 (5th Cir. 2022) .................................................................................................... 17
*Hanson v. Sherrod*,
797 F.3d 810 (10th Cir. 2015) ................................................................................................... 6
*Huawei Techs. USA, Inc. v. FCC*,
2 F.4th 421 (5th Cir. 2021) ............................................................................................... 16, 18
*In re Andrews*,
236 F. 300 (D. Vt. 1916) .......................................................................................................... 11
*In re Sindona*,
584 F. Supp. 1437 (E.D.N.Y. 1984) ........................................................................................ 12
*Johnson v. Gill*,
883 F.3d 756 (9th Cir. 2018) ................................................................................................... 11
*Kholyavskiy v. Achim*,
443 F.3d 946 (7th Cir. 2006) ................................................................................................... 10
*Konigsberg v. Ciccone*,
417 F.2d 161 (8th Cir. 1969) ................................................................................................... 12
*Lalla v. State*,
463 S.W.2d 797 (Mo. 1971) .............................................................................................. 12, 13
*Meachum v. Fano*,
427 U.S. 215 (1976) ................................................................................................................ 20
*Moody v. Holman*,
887 F.3d 1281 (2018) .............................................................................................................. 20
*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022) ................................................................................................................ 18
*Poland v. Reno*,
29 F. Supp. 2d 8 (D.D.C. 1998)............................................................................................... 12
*Ponzi v. Fessenden*,
258 U.S. 254 (1922) .......................................................................................................... 10, 13
*Richerson v. State*,
428 P.2d 61 (Idaho 1967) ........................................................................................................ 12

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004) ............................................................ 5, 9, 10
*Sandin v. Conner*,
   515 U.S. 472 (1995) ...................................................................... 20
*Smith v. McKinney*,
   954 F.3d 1075 (8th Cir. 2020) ..................................................... 20
*State v. Heisler*,
   390 P.2d 846 (Ariz. 1964) ........................................................... 12
*Thomas v. Levi*,
   422 F. Supp. 1027 (E.D. Pa. 1976) ............................................. 13
*Thomas v. Pearson*,
   242 F. App'x 21 (5th Cir. 2009) .................................................. 19
*Trigg v. Moseley*,
   433 F.2d 364 (10th Cir. 1970) ..................................................... 12
*United States v. Dowdle*,
   217 F.3d 610 (8th Cir. 2000) ....................................................... 18
*United States v. Hooker*,
   607 F.2d 286 (9th Cir. 1979) ....................................................... 12
*United States v. Warren*,
   610 F.2d 680 (9th Cir. 1980) ................................................... 5, 14
*Wales v. Whitney*,
   114 U.S. 564 (1885) ................................................................... 5, 9
*Weekes v. Fleming*,
   301 F.3d 1175 (10th Cir. 2002) ................................................... 11
*Wilkins v. State*,
   245 A.2d 80 (Md. Ct. Spec. App. 1968)................................. 12, 13
*Zerbst v. McPike*,
   97 F.2d 253 (5th Cir. 1938) ......................................................... 11

Statutes

18 U.S.C. § 3623 ............................................................................... passim
18 U.S.C. § 3622 ...................................................................................... 16
18 U.S.C. § 4085 ................................................................................ 11, 12
18 U.S.C. §§ 733, 733a, 733b (1940) ...................................................... 11
21 U.S.C. § 823 ........................................................................................ 17
21 U.S.C. § 958 ........................................................................................ 17
28 U.S.C. § 2241 ................................................................................ 5, 8, 9
28 U.S.C. § 2254 ........................................................................................ 8
49 U.S.C. § 40101 .................................................................................... 17
Pub. L. No. 98-473 ................................................................................... 11
Pub. L. No. 76-503 ................................................................................... 11
Pub. L. No. 80-772 ................................................................................... 11

# INTRODUCTION

On February 28, 2025 the Acting Director of the Federal Bureau of Prisons (BOP) determined pursuant to 18 U.S.C. § 3623 that it was in the public interest to transfer inmate George John Hanson (Petitioner)—who was then serving a federal life sentence—to the custody of the State of Oklahoma, which had imposed on Petitioner a sentence of death for the violent murder of a 77-year-old woman. On March 1, 2025, the BOP transferred Petitioner to state custody, and he is currently incarcerated at the Oklahoma State Penitentiary, where he awaits fulfillment of his sentence of death. Notwithstanding that the BOP no longer has custody of Petitioner, he now petitions for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3) that would require the Acting Regional Director, and the Acting Director of the BOP to "secure physical custody of [him]." *See* Pet. & Compl., Prayer for Relief at 15, ECF No. 2.

There is no legal basis for the relief Petitioner demands. His Petition and Complaint (Petition) against the Federal Respondents should be dismissed for four reasons. *See* ECF No. 2. First, under the Supreme Court's longstanding immediate custodian rule, "in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (*citing Wales v. Whitney*, 114 U.S. 564, 574 (1885)). Petitioner is no longer in federal custody and his habeas Petition against the federal Respondents should be dismissed on that basis alone. Next, Petitioner is obligated at the threshold to establish that this Court has jurisdiction over his claim, but transfer decisions of a federal prisoner to a state authority are solely "a matter of comity to be resolved by the executive branches of the two sovereigns." *United States v. Warren*, 610 F.2d 680, 684 (9th Cir. 1980). The habeas relief Petitioner requests would constitute an unwarranted judicial intrusion into a matter

within the exclusive authority of the Executive Branch. Further, even if some limited review of the transfer decision was allowed, the statutory requirements in 18 U.S.C. § 3623 have plainly been satisfied. Finally, he has no due process right to return to federal custody.

Here, Congress has expressly empowered the BOP Director to determine whether to transfer a federal prisoner to the custody of a state authority. *See* 18 U.S.C. § 3623. That statute permits the transfer of any prisoner on request of the State Authority where "the Director [of BOP] finds that the transfer would be in the public interest." *Id.* As authorized by federal statute, following a request to transfer Petitioner by the State of Oklahoma, the Acting Director of the BOP made this public interest determination, and transferred Petitioner to state custody. *See* Acting Dir. BOP Ltr. to AG Okla. & Attachment, attached as Exh. 1. The Acting Director found that transfer of Petitioner would further public safety, promote state and federal cooperation on capital crimes, and achieve justice for the victim's family and community. This Court should decline Petitioner's baseless request that the Court substitute its own assessment of the "public interest" for that of the Federal Respondents.

Accordingly, the Court should grant Respondents' motion to dismiss the Petition for a writ of habeas corpus for the reasons set out below.

## BACKGROUND

The pertinent facts related to Petitioner's federal and state criminal convictions are as follows. In August and September 1999, Petitioner John Hanson and an accomplice engaged in a violent, armed crime spree during which Petitioner brutally murdered 77-year-old Mary Bowles. *See Hanson v. Sherrod*, 797 F.3d 810, 819–20 (10th Cir. 2015). Petitioner was arrested on September 9, 1999, and later convicted of various violent crimes in the U.S. District Court for the Northern District of Oklahoma. *See* Verdict as to Def. George John Hanson, ECF No. 62, filed in

*United States v. Miller*, 4:99-cr-00125-HDC (N.D. Okla.). On July 17, 2000, Petitioner was sentenced to life in prison to be followed by a consecutive sentence of 984 months and placed in the custody of the BOP. *See* Am. Judgment at 3, ECF No. 86, filed in *Miller*, 4:99-cr-00125-HDC. Petitioner was later tried by the State of Oklahoma for the murder of Ms. Bowles, and on February 7, 2006, Petitioner was sentenced to death by a jury of his peers for Murder in the First Degree. *See* AG Okla. Ltr. & Attachments, ECF No. 2-1 at 3.

On October 14, 2022, the Attorney General of Oklahoma requested that BOP transfer Petitioner to state custody pursuant to 18 U.S.C. § 3623 to allow the state to carry out his sentence of death, but the Regional Director for the South Central Region of BOP denied this request and Petitioner remained in BOP custody at USP Pollock in Pollock, Louisiana. *See* ECF No. 2-1 at 9. On January 23, 2025, the Attorney General of Oklahoma again requested that the BOP transfer Petitioner to Oklahoma custody. *See id.* at 1–2. While the BOP considered this transfer request, Petitioner sued Attorney General Drummond and officials from the BOP on January 29, in the U.S. District Court for the Western District of Louisiana, seeking to prevent his transfer. *See* Compl., ECF No. 1; Mot. for TRO, ECF No. 3, filed in *Hanson v. Drummond*, Case No. 25-cv-102-DDD-JPM (W.D. La.). The district court dismissed the complaint as unripe because the Director of BOP had not yet made a determination to transfer Petitioner pursuant to 18 U.S.C. § 3623. *See* J. at 5, ECF No. 20, filed in *Hanson*, Case No. 25-cv-102 (W.D. La.).

Separately, President Trump issued an Executive Order on January 20, 2025 entitled, *Restoring the Death Penalty and Protecting Public Safety*, available at https://www.whitehouse.gov/presidential-actions/2025/01/restoring-the-death-penalty-and-protecting-public-safety/ (Jan. 20, 2025), making clear that "[c]apital punishment is an essential tool for deterring and punishing those who would commit the most heinous crimes and acts of

lethal violence against American citizens." *Id.* § 1. Among other things, that Executive Order directs the Attorney General to encourage States to bring State capital charges, evaluate whether certain federal offenders can be charged with State capital crimes, and otherwise take actions to preserve capital punishment in the States. *Id.* §§ 3(b), 3(e), & 4. Shortly after being confirmed, Attorney General of the United States Pam Bondi issued a memorandum for the Acting Director of the Federal Bureau of Prisons regarding the transfer of Petitioner Hanson. *See* Exh. 1 at 2–3. That memorandum authorizes the transfer of Petitioner in response to Attorney General Drummond's request, noting that capital punishment is "vitally important to preserving public safety, supporting the rule of law, and achieving justice." *Id* at 2. Citing this fact as well as the horrendous suffering caused by Petitioner, Attorney General Bondi concluded, as required by 18 U.S.C. § 3623, that Petitioner's transfer is in the "public interest." *Id* at 2–3. On February 28, 2025, Acting BOP Director William Lothrop concurred with Attorney General Bondi's determination of the public interest in transferring Petitioner, and directed the Acting Regional Director for the South Central Region of BOP and the Warden of USP Pollock to transfer Petitioner to Oklahoma custody. *See id.* at 1. On March 1, 2025, the Federal Government relinquished custody of Petitioner when BOP transferred him to the custody of the State of Oklahoma pursuant to 18 U.S.C. § 3623. Petitioner remains in custody at the Oklahoma State Penitentiary, where he is awaiting fulfillment of his sentence of death. *See* Pet. & Compl. ¶ 24.

Petitioner filed his Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 on March 14, 2025. *See* Pet. & Compl., ECF No. 2. The Court initially ordered Respondents to file a response by March 28, 2025, but later issued an Order extending the time to respond to April 23, 2025, and giving Respondents the option to file an answer to the Petition in accordance with Rule 5 of the Rules Governing Section 2254 Cases, or to file a motion to dismiss "based upon 28 U.S.C.

§ 2241, 28 U.S.C. § 2254, or other applicable statute." *See* ECF No. 5. Federal Respondents have elected to file this Motion to Dismiss based on 28 U.S.C. § 2241.

## ARGUMENT

This Court should dismiss the Petition for a writ of habeas corpus because Petitioner fails to show any entitlement to the requested relief and this Court lacks jurisdiction over Petitioners' claims. The writ of habeas corpus is available to a state inmate like Petitioner under 28 U.S.C. § 2241(c)(3) only when "[h]e is in custody in violation of the Constitution or laws or treaties of the United States," but Petitioner's allegations of violations of U.S. law are fatally flawed. First, Petitioner premises his request for a writ of habeas corpus on the common law doctrine of "primary jurisdiction" that governs how to deal with a prisoner who has violated the laws of multiple sovereigns. *See* Pet. & Compl. ¶¶ 26–30. Second, Petitioner argues that BOP could not change its view of the public interest in transferring him to Oklahoma, nor could it transfer him until shortly prior to the expiration of his federal sentence without violating the statute governing transfers of federal prisoners to state authorities, 18 U.S.C. § 3623. Pet. & Compl. ¶¶ 28–30. Finally, he claims that his rapid transfer to Oklahoma custody violated his right to due process under the U.S. Constitution. *See* Pet. & Compl. ¶¶ 32–38. Each of these arguments is unavailing, and Petitioner fails to meet this burden to obtain habeas relief.

### A. Federal Respondents Do Not Have Custody of Petitioner and Are Not Proper Habeas Respondents.

At the outset, Petitioner has improperly named Federal officials as respondents to his Petition for habeas relief. He is currently an inmate in state custody at the Oklahoma State Penitentiary. Pet. & Compl. ¶ 1. Under the immediate custodian rule, "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (*citing Wales v.*

*Whitney*, 114 U.S. 564, 574 (1885)); *see also* Habeas Rule 2(a) ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."). Because Petitioner is not being held by any federal officials or at a BOP facility, no BOP or federal official can be a proper respondent for his habeas petition. *See, e.g., Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) ("A century-old line of Supreme Court precedent has defined a habeas petitioner's custodian as the person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge.") (internal quotations omitted).

Although under Habeas Rule 2(b) the Attorney General may properly be named as a respondent when an inmate in state custody challenges his future federal custody, that exception does not apply here because Petitioner challenges only his current state custody. *See, e.g.*, *Hunnicutt v. Reardon*, No. 22-CV-00325-GPG, 2022 WL 22336183, at *2 (D. Colo. Mar. 29, 2022), *report and recommendation adopted*, No. 22-CV-00325-GPG, 2022 WL 22336187 (D. Colo. Apr. 25, 2022). The Petition should therefore be dismissed as to all Federal Respondents. *See Padilla,* 542 U.S. at 442 ("Accordingly, we hold that [the officer in charge of the facility where Padilla is detained], not Secretary Rumsfeld, is Padilla's custodian and the proper respondent to his habeas petition.").

### B.     A Decision to Transfer a Federal Prisoner to a State Authority under Section 3623 is not Subject to Judicial Review.

Even assuming, however, that federal officials are the proper respondents, the transfer of an inmate from BOP to a state prison system under 18 U.S.C. § 3623 is not subject to judicial review. For well over a century, federal courts have recognized that the Federal Government may waive its sovereign right to exclusive custody over a federal prisoner and transfer the prisoner to a State "as a matter of comity."  *See, e.g.*, *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922)

(expressing "no doubt" that this authority exists); *In re Andrews*, 236 F. 300, 301 (D. Vt. 1916) (describing this principle as "well settled"). In many cases, such a waiver is partial; the Federal Government temporarily "loan[s]" its prisoner to the State, typically for court proceedings, "without a complete surrender of [its] prior jurisdiction over him." *See, e.g.*, *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938). In other circumstances, the Federal Government fully surrenders its superior claim to impose its sentence, permanently transferring the prisoner to State custody, and yielding primary jurisdiction to the State. *See, e.g.*, *Johnson v. Gill*, 883 F.3d 756, 765 (9th Cir. 2018); *cf. Weekes v. Fleming*, 301 F.3d 1175, 1181 (10th Cir. 2002) (Idaho permanently relinquished custody of an inmate to the Federal Government). This longstanding authority to transfer an inmate from one sovereign to another has its origins in the common law and has also been codified in statute.

In 1940, Congress enacted such an express authority—the predecessor statute to § 3623. The statute provided that the Attorney General "shall" cause a federal prisoner to be transferred to a State prison "prior to his release" (1) "upon the request of the Governor or the executive authority of such State;" (2) "upon the presentation of a certified copy of [an] indictment or judgment of conviction" for a state-law felony; (3) "if [the Attorney General] finds it in the public interest to do so." Act of April 30, 1940, Pub. L. No. 76-503, 54 Stat. 175 (originally codified at 18 U.S.C. §§ 733, 733a, 733b (1940)). In 1948, the statute was transferred to 18 U.S.C. § 4085, *see* Pub. L. No. 80-772, 62 Stat. 850 (June 25, 1948), and in 1984 it was transferred (with minor stylistic changes) to § 3623. *See* Pub. L. No. 98-473, 98 Stat. 2008 (Oct. 12, 1984); *see also* S. Rep. No. 98-223 at 140–41 (1983) (noting that the current § 3623 "is derived from [the former] § 4085(a), except that language relating to appropriations is omitted as unnecessary").

The Fifth Circuit, as well as numerous other federal courts, has interpreted § 3623's

predecessor statute as "codify[ing]" the power recognized in *Ponzi*—that is, as congressional affirmation of the common law doctrine that the Attorney General may in her sole discretion waive, in whole or in part, the Federal Government's exclusive, primary jurisdiction over a prisoner wanted by a State. *Atkinson v. Hanberry*, 589 F.2d 917, 919 n.4 (5th Cir. 1979); *see also United States v. Hooker*, 607 F.2d 286, 289 (9th Cir. 1979); *Trigg v. Moseley*, 433 F.2d 364, 367 (10th Cir. 1970); *Konigsberg v. Ciccone*, 417 F.2d 161, 162 (8th Cir. 1969); *In re Sindona*, 584 F. Supp. 1437, 1443 (E.D.N.Y. 1984); *Commonwealth v. McGrath*, 205 N.E.2d 710, 712 & n.2 (Mass. 1965); *State v. Heisler*, 390 P.2d 846, 848 (Ariz. 1964); *Wilkins v. State*, 245 A.2d 80, 83 (Md. Ct. Spec. App. 1968). But the statutory codification "in no way lessened the Attorney General's discretionary power" to grant or deny a State's transfer request. *Heisler*, 390 P.2d at 848; *see also Ciccone*, 417 F.2d at 162; *Wilkins*, 245 A.2d at 83; *Richerson v. State*, 428 P.2d 61, 62 (Idaho 1967); *Lalla v. State*, 463 S.W.2d 797, 799 (Mo. 1971). Federal Respondents are aware of no case concluding that § 3623 limited the Attorney General's or BOP Director's discretion in any fashion.

Numerous cases interpreting § 3623's predecessor—18 U.S.C. § 4085—establish that the opposite is true: Rather than cabining the discretion of the Attorney General or BOP Director, the "public interest" provision codifies the broad discretion that the Supreme Court recognized in *Ponzi*. *See Heisler*, 390 P.2d at 848 (whether to transfer was "wholly a matter for the United States, through its Attorney General to determine" prior to enactment of § 4085, and enactment of statute "in no way lessened the Attorney General's discretionary power"); *Ciccone*, 417 F.2d at 162 ("Under § 4085 the Attorney General has the authority" to transfer federal inmate; "[t]he exercise of this authority is discretionary, however, and the Attorney General need not transfer a prisoner."); *Poland v. Reno*, 29 F. Supp. 2d 8, 10 n.1 (D.D.C. 1998) (referring to the Attorney General's authority under § 4085 as the unreviewable "discretionary decision to transfer a prisoner");

*Thomas v. Levi*, 422 F. Supp. 1027, 1033 n.20 (E.D. Pa. 1976) (describing § 4085 as "a statute allowing the Attorney General at his discretion to turn over federal prisoners to state authorities"); *see also Lalla*, 463 S.W.2d at 799 (citing § 4085 and explaining that "return of this defendant to Missouri . . . would be purely discretionary with the United States Attorney General").

The legislative history is in accord. The Senate Judiciary Committee report on the Comprehensive Crime Control Act, through which Congress transferred the statute to its current location in the U.S. Code, explained that the "last requirement of public interest places the entire transfer procedure directly within the discretion of the Director of the Bureau of Prisons." S. Rep. No. 98-225 at 144 (1983). "This granting of discretion to the Director follows closely Section 3621(b) which permits the Bureau to designate the place of the prisoner's confinement, whether or not such place is maintained by the federal government." *Id.*; *see also id.* at 142 (describing the "public interest" provision in § 3623 as the "catch-all clause at the end of the subsection"). Congress insulated BOP's discretionary "public interest" determinations from APA review to "assure that [BOP] is able to make [such decisions] without constant second-guessing." *Id.* at 149.

If anything, Congress's decision to shield transfer decisions from APA review in § 3625 reflects a congressional intent not to allow *any* judicial review of decisions under § 3623. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). When Congress has excluded or restricted private enforcement of a statute, plaintiffs "cannot, by invoking [a court's] equitable powers, circumvent Congress's" restrictions. *Id.* at 328. The decision whether, and to what extent, the federal government will "waive its strict right to exclusive custody of" a given prisoner over whom the federal government has primary jurisdiction is "solely [within] the discretion of the sovereign[]." *Ponzi*, 258 U.S. at 260. The federal courts

have no role to play in this issue. *See Warren*, 610 F.2d at 684–85. Indeed, it is well settled that "[d]etermination of priority of custody and service of sentence between state and federal sovereigns" is "an executive, and not a judicial, function." *Id.*

As a matter of comity, the federal and state governments regularly negotiate sovereign-to-sovereign transfers of primary jurisdiction over a detainee, such that the transferring sovereign yields its right to impose its own sentence on an inmate before a receiving sovereign gets a chance to do so. There is no evidence that Congress sought to include the federal judiciary in that exclusive executive process. Because a decision to transfer a federal prisoner to a state authority is not subject to judicial review, this Court should dismiss the Petition for habeas relief.

### C. Petitioner's Transfer Meets the Statutory Requirements of Section 3623.

Setting aside the jurisdictional and other issues identified above, Petitioner's transfer to Oklahoma custody satisfied all relevant legal requirements. Section 3623 provides that, when three enumerated conditions[1] are satisfied, the BOP Director "shall order that a prisoner who has been charged . . . with, or convicted of, a State felony, be transferred to [State custody] prior to his release from a Federal prison facility." Where all three conditions for transfer to state custody are met, there is no violation of § 3623 unless BOP *releases* the prisoner rather than transferring him.

Here, Attorney General Drummond's January 23, 2025 Letter, and transmittal of a certified copy of the judgment of conviction satisfies the first two enumerated conditions. *See* ECF No. 2-1 at 1–2, 6–7. Further, Congress has expressly empowered the BOP Director to decide whether to effectuate such transfers, which are to occur only "*if . . . the Director* finds that the transfer would

---

[1] These three conditions are: "(1) the transfer has been requested by the Governor or other executive authority of the State; (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and (3) the Director finds that the transfer would be in the public interest." 18 U.S.C. § 3623.

be in the public interest." 18 U.S.C. § 3623(3) (emphasis added). As such, Section 3623 grants the BOP Director exceedingly broad discretion over transfers—similar to the unreviewable discretion he enjoys under § 3621(b). S. Rep. No. 98-223, Sept. 14, 1983, at 141; *see also Armstrong v Salinas*, Civil Action No. 6:13-179-KKC, 2014 WL 340399, at *8 (E.D. Ky. Jan. 30, 2014) ("[A]ll transfers and prison assignment are functions wholly within the discretion of [] BOP."). Ultimately, once the first two conditions are met under § 3623, the statutory provision "places the entire transfer procedure directly within the discretion of the Director of the Bureau of Prisons." S. Rep. No. 98-223, Sept. 14, 1983, at 141.

The Acting Director of BOP William Lothrop made the determination that Petitioner's transfer was in the public interest, *see* Exh. 1 at 1, meaning that the third enumerated condition of Section 3623 is also satisfied. *See also* Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions, Memo. Att'y Gen., at 4 (Feb. 5, 2025), attached as Exh. 2 (directing the Federal Bureau of Prisons to "work with each state that allows capital punishment to ensure that states have sufficient supplies and resources to impose the death penalty," including "transferring federal inmates with state or local death sentences to the appropriate authorities to carry out those sentences"). As a result, Petitioner's transfer was permitted under statute and lawful, and this Court should dismiss the Petition for a writ of habeas corpus.

Further, the statute's "public interest" standard confers exceedingly broad discretion on the decisionmaker. In interpreting § 3623(3), the Court must "start with the text." *BNSF Railway Co. v. United States*, 775 F.3d 743, 751 (5th Cir. 2015). The text provides that the BOP Director shall approve a State's transfer request "if . . . the Director finds that the transfer would be in the public interest." 18 U.S.C. § 3623. The ordinary meaning of the "public interest" means or refers to "[t]he general welfare of a populace considered as warranting recognition and protection" or

"[s]omething in which the public as a whole has a stake; esp., an interest that justifies government regulation." Public Interest, *Black's Law Dictionary* (12th ed. 2024); *see also* Public Interest, *Oxford English Dictionary* (Sept. 2007) ("the benefit or advantage of the community as a whole; the public good."). Congress left the term "public interest" particularly open-ended in § 3623. As used in Section 3623, the term "public interest" does not impose any constraint on the decisionmaker's discretion. To the contrary, the term is "both broad and vague"—an "open-textured term" that the Supreme Court has interpreted "expansively." *See, e.g.*, *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 437-38 (5th Cir. 2021). Unlike neighboring statutes, § 3623 does not enumerate any specific factors for consideration in evaluating the "public interest," leaving it particularly open-ended.

Compare Congress's use of the term in the immediately preceding statutory section, which sets forth the circumstances in which a prisoner may be temporarily released by BOP. Pursuant to § 3622, BOP may temporarily release a prisoner "if such release appears to be consistent with the purpose for which the sentence was imposed" and any relevant policy statements by the United States Sentencing Commission, "if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to . . . visit a designated place" for no more than 30 days for various purposes. 18 U.S.C. § 3622.

The statute then lists five purposes (visiting a dying relative, attending a relative's funeral, obtaining otherwise unavailable medical treatment, contacting a prospective employer, and establishing family or community ties) as well as a catch-all sixth: "engaging in any other significant activity *consistent with the public interest*." *Id.* § 3622(a)(1)–(6) (emphasis added). Perhaps then, in the context of § 3622, Congress's reference to "*other*" activities "consistent with

the public interest" indicates that the term "public interest" is to be interpreted in light of the preceding list of five activities. *See id.* (emphasis added); *see also Easom v. US Well Servs., Inc.*, 37 F.4th 238, 243 (5th Cir. 2022) (concluding that a broad term should be read in the context of any examples of that term specifically enumerated in the statutory text). In Section 3623, however, Congress offered no limiting guideposts, affording the BOP Director broad latitude to determine whether transfer "would be in the public interest."

Similarly, Congress did not enumerate specific factors for the BOP Director to consider in exercising his discretion to assess whether transfer "would be in the public interest." That omission is noteworthy given that Congress knows how to shape the contours of a public-interest inquiry when it wants. *See* 21 U.S.C. § 823(d) ("In determining the public interest [in assessing whether to grant manufacturer CSA registration], the following factors shall be considered: (1) maintenance of effective controls against diversion . . . ; (2) compliance with applicable State and local law; (3) promotion of technical advances in the art of manufacturing these substances and the development of new substances; (4) prior conviction record of applicant under Federal or State laws relating to the manufacture, distribution, or dispensing of such substances; (5) past experience in the manufacture of controlled substances . . . ; and (6) such other factors as may be relevant to and consistent with the public health and safety."); *see also* 21 U.S.C. § 958 ("In determining the public interest, the factors enumerated in paragraph (1) through (6) of section 823(a) of this title shall be considered."); 49 U.S.C. § 40101 ("[T]he Secretary of Transportation shall consider the following [sixteen factors], among others, as being in the public interest and consistent with public convenience and necessity . . . ."). These examples demonstrate that, even when Congress provides guidance as to how a public-interest determination should unfold, the inquiry is still a far-reaching one. Where, as here, Congress has not even attempted to cabin the

considerations relevant to the public-interest decision, the decisionmaker has even greater discretion. *See, e.g.*, *Huawei*, 2 F.4th at 437–38 (explaining that the term "public interest" is "both broad and vague" and an "open-textured term" that has been interpreted "expansively" by the Supreme Court).

Petitioner's arguments seeking to limit BOP's discretion under § 3623 lack merit. Petitioner relies on the common law doctrine of primary jurisdiction, but he provides no authority for the novel position that it overrides § 3623, such that Petitioner cannot be transferred to state custody until his federal sentence has concluded. *See* Pet. & Compl. ¶ 27. To the contrary, even where a sovereign has "primary jurisdiction," it can "elect under the doctrine of comity to relinquish" custody of a prisoner to another sovereign. *United States v. Dowdle*, 217 F.3d 610, 611 (8th Cir. 2000) (per curiam).

Petitioner also misses the mark by arguing that § 3623 imposes a "temporal limitation" on BOP's transfer authority, thereby restricting transfers only to the period of time immediately before a prisoner is released from federal custody. *See* Pet. & Compl. ¶ 29. The text of the statute provides no such limitation. Instead, § 3623 provides that the transfer of a prisoner is authorized "prior to his release from a Federal prison facility." That clear language simply means that the transfer must occur at some point before the prisoner is released from federal custody. There is no basis for the Court to re-write § 3623 to add an adverbial phrase limiting when the transfer can occur—such as "immediately prior to" or "several days prior to"—that is not present in the text. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("The Court may not 'replace the actual text with speculation as to Congress' intent.'"). In any event, the Acting Director of BOP has explained why transferring Petitioner well before the conclusion of his federal sentence would serve the public interest by enhancing public safety, promoting state and federal cooperation on

death penalty cases, and achieving a measure of justice for the victim's family and community. As explained above, the Court cannot second-guess that determination.

This conclusion is not altered by the fact that when the State of Oklahoma requested in August of 2022 that BOP transfer Petitioner from federal custody into state custody, *see* Pet. & Compl. ¶ 16, then-Regional Director for the South Central Region of BOP denied the request and stated that the transfer "is not in the public interest." ECF No. 2-1 at 9. First, notwithstanding any prior communication by a Regional Director in 2022, Acting Director Lothrop had the authority under § 3623 to make his own determination of the public interest in 2025 in response to Oklahoma's renewed request to transfer Petitioner to state custody. Second, recent actions by President Trump and Attorney General Bondi reflect the Federal Government's current view of the public interest in matters relating to the death penalty has changed since 2022. *See Restoring the Death Penalty and Protecting Public Safety*, available at https://www.whitehouse.gov/presidential-actions/2025/01/restoring-the-death-penalty-and-protecting-public-safety/; *see also* Exh. 2. There is nothing unlawful about Director Lothrop taking these new considerations into account when exercising his discretion to transfer Petitioner under § 3623.

Because all three conditions for Petitioner's transfer to state custody were clearly met, the Court should dismiss the Petition for habeas relief.

### D. Petitioner Has No Due Process Right to Remain in Federal Custody.

Petitioner also claims that the transfer process violated his constitutional right to due process, *see* Pet. & Compl. ¶¶ 32–38, but the Due Process Clause of the Fifth Amendment does not protect a convicted prisoner against transfer from one institution to another. *See Thomas v. Pearson*, 242 F. App'x 21, 22 (5th Cir. 2009) (inmate "has no constitutional right to be incarcerated

in the facility of his choice"). In *Meachum v. Fano*, the Supreme Court held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (rejecting state inmates' arguments that Fourteenth Amendment Due Process Clause protects inmates from transfer between institutions within the state prison system). "In fact, prison administrators may ordinarily transfer a prisoner for whatever reason or for no reason at all." *Smith v. McKinney*, 954 F.3d 1075, 1080 (8th Cir. 2020). In considering whether a prison transfer implicates an inmate's constitutional liberty interest, courts consider whether the transfer "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding state prison regulations and Due Process Clause did not provide protected liberty interest in avoiding transfer to a disciplinary unit). Here, the Petition and Complaint is devoid of any allegation that conditions of Petitioner's confinement in Oklahoma custody impose a hardship beyond "the ordinary incidents of prison life." *See id.* Here, where the Director of BOP has absolute discretion to make a public interest determination under § 3623, and there is no allegation of "atypical and significant hardship" from the conditions in Oklahoma custody, there is no cognizable liberty interest under the Due Process Clause. *See id.*; *see also Moody v. Holman*, 887 F.3d 1281, 1290–91 (11th Cir. 2018) (citing cases for proposition that an inmate has no cognizable federal right to "delay his execution by the second sovereign until he finishes serving a non-capital sentence imposed by the first sovereign").

## CONCLUSION

For the foregoing reasons, the Court should grant Respondents' motion to dismiss Petitioner's Petition for a writ of habeas corpus.

Dated: April 4, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

ANDREW WARDEN
Assistant Director

/s/ *Kevin K. Bell*
KEVIN K. BELL
(GA Bar No. 967210)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 305-8613
E-mail: Kevin.K.Bell@usdoj.gov
*Counsel for the United States*

**CERTIFICATE OF SERVICE**

On April 4, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court for the Eastern District of Oklahoma, using the electronic case filing system of the Court. I hereby certify that I have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

/s/ *Kevin K. Bell*
KEVIN K. BELL
(GA Bar No. 967210)
Trial Attorney
*Counsel for the United States*