IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| John Fitzgerald Hanson, | ) | |
| | ) | **Execution Date:** |
| Petitioner, | ) | **June 12, 2025 at 10:00AM** |
| | ) | |
| v. | ) | |
| | ) | Case No. 25-cv-81-RAW-JAR |
| Christe Quick, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**PETITIONER/PLAINTIFF JOHN FITZGERALD HANSON'S MOTION FOR STAY OF EXECUTION AND BRIEF IN SUPPORT**

John Fitzgerald Hanson, by and through his attorneys, moves this Court for a stay of execution. **Mr. Hanson's execution is set for Thursday, June 12, at 10:00 A.M.** *See Barefoot v. Estelle*, 463 U.S. 880, 889 (1983) ("Approving the execution of a defendant before his [petition] is decided on the merits would clearly be improper."); *see also Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (holding that a court may stay an execution if needed to resolve issues raised in initial petition).

**BRIEF IN SUPPORT**

On March 14, 2025, Mr. Hanson filed an intertwined petition for habeas corpus pursuant to 28 U.S.C. § 2241(c)(3) and complaint for injunctive and declaratory relief. Doc. 2. Mr. Hanson noted this Court may grant habeas relief to a prisoner who "is unlawfully confined in the wrong institution" because "his grievance is that he is being unlawfully subjected to physical restraint, and . . . habeas has been accepted as the specific instrument to obtain release from such confinement." *Preiser v. Rodriguez*, 411 U.S. 475,

1

486 (1973) (citing *In re Bonner*, 151 U.S. 242 (1894), and *Humphrey v. Cady*, 405 U.S. 504 (1972)) (footnote omitted). *See* Doc. 2 at 1. Mr. Hanson asked the Court to grant a writ of habeas corpus; declare Mr. Hanson's present physical custody status unlawful; issue an order requiring Warden Quick to arrange to return physical custody of Mr. Hanson to federal custody; issue an order requiring BOP Director Lothrop to secure physical custody of Mr. Hanson; and grant such other relief as this Court deems proper and just. Doc. 2 at 15. At the time of its filing, the Oklahoma Court of Criminal Appeals (OCCA) had not set an execution date for Mr. Hanson, but on April 1, 2025, OCCA set an execution date of June 12, 2025.

On April 4, 2025, the Oklahoma Respondents/Defendants filed a response in opposition to Mr. Hanson's request for a writ of habeas corpus (Doc. 7), and the Federal Respondents/Defendants filed a motion to dismiss (Doc. 14). Mr. Hanson filed his reply to the response (doc. 15) and a response to the motion to dismiss (Doc. 16) on April 21, 2025, and the instant motion follows a week later on April 28, 2025 (Doc. 17). A stay of execution is now needed to allow the case to proceed in orderly fashion.

Federal courts traditionally consider four factors in evaluating whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009); *see also Glossip v. Gross*, 576 U.S. 863, 876 (2015) (stating plaintiff seeking

2

preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004). Consideration of these factors in this case counsel a finding that a stay of execution is warranted.

I. **Mr. Hanson is Likely to Succeed on the Merits.**

Mr. Hanson is likely to succeed on the merits of his claim. First, Mr. Hanson was improperly moved to Oklahoma State Penitentiary (OSP) under the auspices of an inapplicable statute, 18 U.S.C. § 3623. As Heriberto Tellez, former Regional Director of the South Central Region of the Federal Bureau of Prisons, noted back in 2022, "Title 18 U.S.C. § 3623 provides for the transfer of a federal prisoner to state custody prior to satisfaction of a federal obligation . . . [o]rdinarily the Federal Bureau of Prisons effectuates such a transfer, when qualified, within the last 90 days of the inmate's satisfaction of the Federal sentence." Doc. 2, Exh.1, p. 9.[1] This tracks with the Bureau of Prison's guidance for 18 U.S.C. § 3623, the very title of which is "Transfer of a Prisoner to State Custody Prior to Release from the Federal Sentence." Doc. 2, Exh. 3. It is easy to see the purpose of § 3623 in its proper framework, and easy to see the statutory framework does not fit Mr. Hanson's transfer.

---

[1] Tellez further stated, "transfer to state authorities for state execution is not in the public interest" because "inmate Hanson is presently subject to a Life term imposed in Federal Court" and because "[i]nmate Hanson is in the primary jurisdiction of federal authorities." *Id.* In the instant case, in addition to transferring Mr. Hanson before the end of his sentence, Respondents considered factors other than the public interest when granting transfer.

This is all discussed further in Mr. Hanson's reply to the Oklahoma Respondents/Defendants' response to Mr. Hanson's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory Relief (doc. 15).

Moreover, any other statutory interpretation takes the "prior to his release" temporal clause as referencing the obvious fact it is impossible to "transfer" a prisoner to State custody *after* he has been set free. The statute would have the same meaning with or without the clause, thus flouting "one of the most basic interpretive canons, that 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States,* 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Mr. Hanson's transfer violated 18 U.S.C. § 3623, and he is likely to succeed on the merits of this claim.

In addition, when the United States District Court for the Western District of Louisiana dismissed Mr. Hanson's complaint without prejudice as unripe because BOP Director Lothrop had not yet officially decided to follow Attorney General Bondi's directive regarding Mr. Hanson, Mr. Hanson and his counsel did not receive notice and opportunity to be heard to re-urge/amend his pleading once the decision was made. *See* Doc. 2 at 12-13. Mr. Hanson's counsel were in the process of drafting an amended complaint to file once the determination by the Director was made, but counsel received no timely notice. Instead, Mr. Hanson was whisked away to Oklahoma over the weekend, and counsel did not receive notice until after the fact (Sunday, March 2, 2025). As a result, Mr. Hanson had to file the instant action in this Court instead.

Mr. Hanson asserts that under the particular and serious circumstances presented, and with the Louisiana complaint just dismissed without prejudice, minimal due process was required. After all, a "prisoner under a death sentence remains a living person and consequently has an interest in his life." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288 (1998) (O'Connor, J., concurring in part and concurring in the judgment). The failure to give notice or opportunity to be heard was arbitrary and capricious, resulting in a deprivation of Mr. Hanson's right to not be deprived of life (and liberty and property) without due process of law under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. The Court should declare the Defendants have deprived Mr. Hanson of his federal constitutional rights. For all the reasons presented above, Mr. Hanson has a substantial likelihood of success on the merits.

## II. Absent a Stay, Mr. Hanson Will Be Irreparably Harmed.

Denying a stay risks "foreclos[ing] . . . review," which constitutes "irreparable harm." *Garrison v. Hudson*, 468 U.S. 1301, 1302 (1984). Allowing the State to execute Mr. Hanson before proceedings have concluded will "effectively deprive this Court of jurisdiction." *Id*. A stay is generally warranted when, as here, mootness is likely to arise during the pendency of the litigation—as it will if Mr. Hanson is executed June 12, 2025. *See Chafin v. Chafin*, 568 U.S. 165, 178 (2013).

A stay in this case is necessary because otherwise Mr. Hanson will be executed in violation of federal law and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. The harm is clear, serious, and irreversible. *See, e.g., Wainwright v.*

*Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring) (stating that the requirement of irreparable harm if stay is not granted "*is necessarily present in capital cases*") (emphasis added).

### III. Respondents/Defendants Will Be Unaffected by a Stay.

Moreover, a stay of execution in this case will not substantially harm Respondents/Defendants. Mr. Hanson seeks merely to maintain the status quo until this action can be resolved on its merits.

There have been many delays, some lasting years and attributable to the State, on the road to Mr. Hanson's execution. As the district court noted in the *Glossip* lethal injection litigation on May 5, 2020, at that point it had "been 1,625 days since the Attorney General said let's put this on hold so we can get our act together." Tr. of Mot. Hr'g before Honorable Stephen P. Friot at 25, *Glossip v. Chandler*, CIV-14-0665-F (W.D. Okla. May 5, 2020). Given that delay, Defendant/Respondent should not be heard to complain of a short delay to protect Mr. Hanson's constitutional rights. The several years the State waited to establish a new protocol undermines any argument regarding the purported urgency in proceeding with an execution before the Court has had an opportunity to evaluate Mr. Hanson's claims. *Osorio-Martinez v. Att'y Gen. of the U.S.*, 893 F.3d 153, 179 (3d Cir. 2018). The short stay sought here will ensure the State does not perform an unconstitutional execution. *See Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J., dissenting from grant of writ of mandate).

Maintaining the status quo is the very purpose of a stay. If the stay is granted in

error and Mr. Hanson's petition for habeas corpus pursuant to 28 U.S.C. § 2241(c)(3) and complaint for injunctive and declaratory relief ultimately fails, then the stay may be lifted, and the State can expeditiously proceed toward a new execution date. A stay of execution in this case will not substantially harm the Respondents/Defendants.

**IV.     A Stay of Execution Will Serve the Public Interest.**

The public interest is not served by executing someone before they have had a full and fair opportunity to avail themselves of legal process. The public interest lies in ensuring agencies act in accordance with the Constitution and federal law. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). This interest is only heightened in the context of executions. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013). Indeed, "the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights." *In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1059 (S.D. Ohio 2012) (citation omitted).

The Supreme Court has confirmed that brief stays or injunctions are warranted to permit potentially meritorious claims to be adjudicated before prisoners are executed. *See Barr v. Roane*, 140 S. Ct. 353 (2019) (Alito, J., respecting the denial of stay or vacatur) ("[I]n light of what is at stake, it would be preferable for the District Court's decision to be reviewed on the merits by the Court of Appeals for the District of Columbia Circuit before the executions are carried out."); *see also Barr v. Lee*, 140 S. Ct. 2590, 2593 (2020)

7

(Sotomayor, J., dissenting) (noting that "because of the Court's rush to dispose of this litigation in an emergency posture, there will be no meaningful judicial review of the grave, fact-heavy challenges respondents bring").

A stay is in the interest of the public because all citizens have an interest in ensuring that the Constitution is upheld. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979). Here, Mr. Hanson's claims newly developed after being moved to Oklahoma, and he has not had the benefit of an adjudication. The citizens of Oklahoma have an interest in ensuring that the law is followed.

## V. The All Writs Act

Further, this Court is empowered to grant the requested stay of execution pursuant to Title 28, United States Code, Section 1651(a), the All Writs Act, which provides:

> The Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The "all writs" authority of Section 1651 "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected," and is "not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal." *Federal Trade Comm'n v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (citations omitted); *Harris v. Nelson*, 394 U.S. 286, 299-300 (1969). In *Harris*, the Court held:

> the habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, this is the inescapable obligation of the courts. Their authority is expressly confirmed in the All Writs Act, 28 U.S.C. § 1651. This statute has served since its inclusion, in substance, in the original Judiciary Act as a

> "legislatively approved source of procedural instruments designed to achieve the rational ends of law." . . . It has been recognized that the courts may rely upon this statute in issuing orders appropriate to assist them in conducting factual inquiries . . . . In *Price v. Johnston*, *supra*, this Court held explicitly that the purpose and function of the All Writs Act [is] to supply the courts with the instruments needed to perform their duty, as prescribed by the Congress and the Constitution, provided only that such instruments are "agreeable" to the usages and principles of law, extend to habeas corpus proceedings.

*Id*. at 299-300 (internal citations omitted). The All Writs Act has been applied as an "instrument" in furtherance of the courts' judicial function.

Specifically, the Eleventh Circuit noted Section 1651 "authorizes the Court to issue a stay to preserve issues for judicial review." *Messer v. Kemp*, 831 F.2d 946, 957 (11th Cir. 1987). This is precisely the relief Mr. Hanson is requesting. It is axiomatic that this Court will irrevocably lose jurisdiction to consider the federal claims that entitle Mr. Hanson to relief if the State of Oklahoma is allowed to execute him before full federal review can occur.

Many courts, including the Supreme Court, have used the All Writs Act to grant stay relief. See *Lenhard v. Wolff*, 443 U.S. 1306 (1979); *Republican State Cent. Comm. v. Ripon Soc'y, Inc.*, 409 U.S. 1222 (1972). In *Lenhard*, then Associate Justice Rehnquist, acting on behalf of the whole Court, used the All Writs Act to continue a stay of execution, although he personally would have voted to deny the stay if sitting as a member of the full court. *Lenhard*, 443 U.S. at 1312. The result in *Lenhard* is consistent with the Court's recognition of the purpose of the All Writs Act:

> Procedural instruments are means for achieving the rational ends of law. . . Unless appropriately confined by Congress, a federal court may avail itself

> of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942).

In *Federal Trade Commission v. Dean Foods Co.*, 384 U.S. 597 (1966), the Court made it clear that a federal court may use the All Writs Act to preserve its future federal jurisdiction over a matter committed to it by statute. The Seventh Circuit enjoined a company's merger and dissolution to preserve its future jurisdiction under the Administrative Procedure Act, which grants the Court of Appeals original jurisdiction to review final orders of federal administrative agencies. Although the regulatory matter of merger and dissolution was pending before an administrative agency and no federal court action formally had been initiated, the Seventh Circuit was empowered by the All Writs Act to stay the dissolution of the company pending invocation of its jurisdiction under the Administrative Procedure Act. *Dean Foods*, 384 U.S. at 603-605.

In *Application of President and Directors of Georgetown College*, 331 F.2d 1000 (D.C. Cir. 1964), Judge Wright issued an order under the All Writs Act permitting nonconsensual blood transfusions. Recognizing that federal jurisdiction does not depend on a comprehensive initial pleading, the Court explicitly noted and excused defects in the form of the papers filed:

> Though the papers may be irregular in form [counsel had appeared in chambers with a proposed order, and filed no other papers], in substance they perform the office of a complaint, indicating the nature of the matter in dispute, the grounds of jurisdiction, and the relief sought. Defects in the complaint are not fatal under the Rules, certainly where the deficiency is explained by lack of time or skill or the like. . . . Even "the lack of a complaint

> is not jurisdictional and *** when there has been no timely objection, a valid judgment may properly be entered in such an informal litigation.

*Id.* at 1001 n.2 (citations omitted).

Historically, the jurisdiction-preserving power of the All Writs Act has been used by the federal courts to stay the execution of death-row prisoners. *See, e.g.*, *Edwards v. New York*, 76 S. Ct. 538 (March 30, 1956) (Harlan, J. in chambers) (despite "grave doubt, to say the least" as to the presence of a substantial federal question, "this being a capital case, I am constrained to give petitioner a reasonable opportunity to petition for a writ of certiorari"); *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.) (even if federal habeas jurisdiction had been absent, the stay of execution was proper, as was contempt prosecution arising from lynching the habeas petitioner during stay; stay was necessary for federal court to determine its own jurisdiction over action).

In *Adderly v. Wainwright*, 58 F.R.D. 389 (M.D. Fla. 1972), the district court relied upon the All Writs Act to justify stays of execution of prisoners absent their filing of individual habeas petitions where other prisoners sought to file a class action on their behalf. The district court determined the All Writs Act conferred authority to apply Federal Rule of Civil Procedure 23 by analogy to a petition for a writ of habeas corpus. The district court held it had been "appropriate, and hence in aid of its habeas corpus jurisdiction, that a writ issue allowing the petitioners to proceed in accordance with the provisions of Rule 23." *Id.* at 401.

## CONCLUSION

Mr. Hanson presents serious issues, and there is a likelihood he will succeed on the

merits. Moreover, an execution is obviously irreparable. A stay would only continue the status quo. The public interest is in close examination of the instant matter. All things considered, there is strong support for a stay.

Wherefore, Mr. Hanson, by and through his counsel, prays the Court grant a stay of execution to allow this case to proceed in orderly fashion.

Respectfully submitted,

*s/ Thomas D. Hird*
Thomas D. Hird, OBA #13580
Research and Writing Specialist
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Oklahoma
405-609-5975
tom_hird@fd.org

Counsel for John Fitzgerald Hanson

## Certificate of Service

I hereby certify that on the 28th day of April 2025, I electronically transmitted the attached document to the Clerk of Court using ECF System for filing, which effects service upon all counsel of record.

*s/ Thomas D. Hird*
Thomas D. Hird