# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

JOHN FITZGERALD HANSON,    )
   )
             Petitioner,    )
   )
v.    )
   )
**CHRISTIE QUICK**, Warden,    )
Oklahoma State Penitentiary;    )
**STEVEN HARPE**, Directors of the    )
Oklahoma Department of Corrections;    )
**DANON COLBERT**, Acting Regional    )
Director, U.S. Department of Justice;    )
**WILLIAM W. LOTHROP**, Acting    )
Director, U.S. Department of Justice,    )
Federal Bureau of Prisons,    )
   )
             Respondents.    )

FILED

MAY 8 2025

BONNIE HACKLER
Clerk, U.S. District Court
By_____
Deputy Clerk

25-cv-081-RAW-JAR

## <u>FINDINGS AND RECOMMENDATION</u>

This matter comes before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief (Docket No. 2), Response to the Motion by the State Respondents (Docket No. 7), Motion to Dismiss by the Federal Respondents (Docket No. 14), and Motion for Stay of Execution (Docket No. 17). Chief District Judge Ronald A. White referred this case to the undersigned Magistrate Judge for all further proceedings in

1

accordance with jurisdiction pursuant to 28 USC § 636. (Docket No. 3).

In every courtroom across this country, from the smallest rural towns to the busiest federal districts, one principal echoes above all others: due process of law. It is not merely a phrase etched into the Fifth and Fourteenth Amendments of our Constitution. It is a promise. A promise that before the government may deprive a person of life, liberty, or property, it must first play by the rules: fair notice, a meaningful opportunity to be heard, and an impartial decision-maker bound by law.

This case involves a man who stood accused of the most serious crime, was afforded the constitutional protections owed to every person, and was ultimately convicted by a jury of peers. The issues now before the Court invite reflection on what due process demands, not just in theory, but in practice once a verdict has been returned.

The appeals process stands as a vital safeguard in our system of justice. It is not a formality; it is a constitutional checkpoint. Through direct appeals, post-conviction relief, and even petitions to the United States Supreme Court, our legal system allows for searching review of both the process and the substance of a conviction. This layered scrutiny

is a testament to how seriously we take the rights of the accused and how deeply we believe that justice must never be rushed, nor assumed, but examined. Due process does not stop at conviction; it walks the long road of appeal to ensure that no stone of fairness is left unturned.

Due process is not the enemy of justice—it is its foundation. When that foundation has held firm, we may stand on it with confidence.

The Court now turns to the legal questions presented. Petitioner is currently in the physical custody of the Oklahoma Department of Corrections and is incarcerated in the Oklahoma State Penitentiary located in McAlester, Oklahoma, where he is awaiting the death penalty. Petitioner was previously in the custody of the federal government being held in USP Pollock, in Louisiana, and had been in the primary custody of the federal government since August 24, 2000. He is attacking his transfer from federal custody to Oklahoma custody alleging the transfer was in violation of the laws and Constitution of the United States.

He sets forth the following grounds for relief:

Count I       WRIT OF HABEAS CORPUS

Count II      ULTRA VIRES VIOLATION OF 18 U.S.C. § 3623

Count III   DECLARATORY RELIEF

Count IV   OKLAHOMA HAS WAIVED JURISDICITON OVER
PLAINTIFF DUE TO A LACK OF PURSUIT AND
INACTION

## I.   HISTORY OF LEGAL PROCEEDINGS AND CUSTODY[1]

**1990s: Crimes and Capture**

Petitioner's crimes began on August 31, 1999, when he and Victor

Miller abducted Mary Bowles from Tulsa's Promenade Mall. The two men

transported her to a remote dirt pit, where Miller executed Jerald

Thurman. Petitioner then murdered Bowles by shooting her multiple

times. On September 3, 1999, they robbed the Dreamland Video store,

restraining a customer and stealing his wallet. Five days later, on

September 8, 1999, they carried out an armed robbery at the Tulsa

Federal Employees Credit Union. Their spree ended on September 9,

1999, when police, acting on an anonymous tip, tracked them to a

Muskogee Econolodge. Petitioner barricaded himself inside, requiring

tear gas to force his surrender. Officers recovered the murder weapons

---

[1] The undersigned takes judicial notice of the docket report and decision in Petitioner's federal post-conviction proceedings. See *United States v. Pursley,* 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (exercising discretion "to take judicial notice of publicly-filed records in [this] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand" (citation omitted)).

4

hidden in a toilet tank.

## 2000s: Conviction, Resentencing, and Appeals[2]

The State of Oklahoma formally sought the death penalty against Petitioner on February 28, 2000. His trial began on May 7, 2001, and over the course of two weeks, prosecutors presented evidence of his guilt. On May 23, 2001, the jury convicted him of first-degree murder for Bowles' death and felony murder for Thurman's. He was sentenced to death for Bowles' murder and life imprisonment for Thurman's.

Petitioner appealed, and on June 11, 2003, the Oklahoma Court of Criminal Appeals (OCCA) overturned his death sentence due to trial errors and remanded the case for resentencing (*Hanson I*, 72 P.3d 40). His resentencing trial took place from January 9 to January 24, 2006.

---

[2] A federal jury convicted Petitioner on January 6, 2000, in the Northern District of Oklahoma following a multi-day trial held January 4–6, 2000. See *United States v. Hanson*, No. 4:99-cr-00125-GKF (N.D. Okla.). The jury found him guilty on Counts 1, 4, 5, 8, 9, 12–15, and 17 of the Superseding Indictment, including: conspiracy, 18 U.S.C. § 371; interference with interstate commerce and aiding and abetting, 18 U.S.C. §§ 1951, 2; possession of a firearm during a crime of violence and aiding and abetting, 18 U.S.C. §§ 924(c), 2; bank robbery and aiding and abetting, 18 U.S.C. §§ 2113, 2; and possession of a firearm after former conviction of a felony, 18 U.S.C. § 922(g)(1). The district court sentenced Hanson to life imprisonment, with multiple lesser sentences imposed concurrently and consecutively on the remaining counts. See Amended Judgment, *United States v. Hanson*, No. 4:99-cr-00125-GKF (N.D. Okla. July 17, 2000), ECF No. 86.

Once again, a jury found three aggravating circumstances and reimposed the death penalty. On April 13, 2009, the OCCA affirmed Petitioner's sentence, though it struck one of the aggravating factors (*Hanson II*, 206 P.3d 1020). Petitioner sought relief from the U.S. Supreme Court, but on December 7, 2009, the Court denied certiorari (*Hanson v. Oklahoma*, 558 U.S. 1081).

### 2010s: Jurisdictional and Habeas Challenges

With his direct appeals exhausted, Petitioner pursued post-conviction relief in federal court. On December 6, 2010, Petitioner challenged his state convictions in a federal habeas petition in the United States District Court for the Northern District of Oklahoma; On July 1, 2013, the court denied the petition on all grounds. *Hanson v. Sherrod*, No. CIV-10-113-CVE-TLW, 2013 WL 3307111 (N.D. Okla. July 1, 2013). This decision was affirmed by the Tenth Circuit on August 13, 2015, *Hanson v. Sherrod*, 797 F.3d 810, 853 (10th Cir. 2015), and certiorari was denied by the Supreme Court. 578 U.S. 979 (2016). The courts rejected every challenge he raised.

In 2020, Petitioner attempted a new strategy. On September 8,

2020, Petitioner filed a Successive Application for Post-Conviction Relief challenging the State's jurisdiction to prosecute him under *McGirt v. Oklahoma*, 591 U.S. 894 (2020) and *Sharp v. Murphy*, 591 U.S. 977 (2020). Successive Application for Post-Conviction Relief, Death Penalty, *Hanson v. State*, PCD-2020-611 (Okla. Crim. App. Sept. 8, 2020). The next day, the OCCA summarily denied the claim, *Hanson v. State*, No. PCD-2020-611 (Okla. Crim. App. Sep. 9, 2021) (unpub.). The Supreme Court denied certiorari. 142 S. Ct. 1137 (2022), closing the door on his jurisdictional argument.

### 2020s: Legal Battles Over Execution

Petitioner also unsuccessfully challenged Oklahoma's execution protocol and method of execution under the U.S. Constitution, as part of a group of death row inmates. He lost those claims at summary judgment and at a federal bench trial in 2022. See *Glossip v. Chandler*, No. 14-CV-665-F, 2022 WL 1997194 (W.D. Okla. June 6, 2022).

In October 2022, Oklahoma officials formally requested Petitioner's transfer, as it appeared there were no remaining legal barriers. The State of Oklahoma set Petitioner's execution date for December 15, 2022.

However, Oklahoma faced an unexpected roadblock: the Federal Bureau of Prisons (BOP). BOP Regional Director Heriberto H. Tellez denied the request, citing discretionary authority under 28 U.S.C. § 3623. Mr. Tellez, under the direction of the previous Presidential Administration, refused to transfer him, arguing that he was serving a life sentence in federal custody, and "his transfer to state authorities for state execution is not in the public interest". See (Docket No. 2 Attachment 1 – Letter dated 10/17/2022, to Oklahoma Attorney General from Heriberto H. Tellez).

In response, the State of Oklahoma sued the BOP, alleging improper interference with a lawful execution (*Oklahoma v. Tellez*, 2022 WL 17686579, 22-cv-00108-O). On November 17, 2022, the U.S. District Court for the Northern District of Texas dismissed the lawsuit, ruling that the BOP had broad discretion under § 3623 and was not obligated to transfer Petitioner.

In 2025, Oklahoma renewed its request for Petitioner's transfer (Docket No. 2 Attachment 1 - Letter dated 1/23/2025 from Oklahoma Attorney General). In this letter, Attorney General Gentner Drummond

requested that the BOP transfer Petitioner by March 20, 2025, to allow for a projected execution date of June 19, 2025. Petitioner, in response, filed *Hanson v. Drummond,* 25-CV-102-DDD-JPM, United States District Court, Western District of Louisiana, on January 29, 2025, suing Oklahoma officials and the BOP in an attempt to block his transfer. On January 31, 2025, Magistrate Judge Perez-Montes issued a recommendation to grant Petitioner a temporary restraining order (TRO), briefly delaying his movement.

That delay did not last. On February 11, 2025, U.S. Attorney General Pam Bondi issued an order directing the BOP to transfer Petitioner to Oklahoma custody. On February 27, 2025, the U.S. District Court for the Western District of Louisiana dismissed Petitioner's lawsuit, affirming that the BOP Director had ultimate authority over transfers under § 3623. The next day, on February 28, 2025, Acting BOP Director Lothrop approved the transfer.

On the night of March 1, 2025, Petitioner was transferred to Oklahoma State Penitentiary. His legal team learned of the transfer only after it had been completed, and they responded with the current lawsuit.

## II. DISCUSSION

The Court acknowledges at the outset that Petitioner has standing to bring this action under the framework set forth in *Moody v. Holman*, 887 F.3d 1281 (11th Cir. 2018). First, Petitioner has alleged an injury-in-fact. He claims that he is currently in the physical custody of the Oklahoma Department of Corrections (ODOC) in violation of the laws and Constitution of the United States. He further contends that, if this Court fails to prevent Defendants from terminating his federal sentence of life imprisonment and transferring him for execution, he will imminently suffer the gravest possible injury: his scheduled death by the State of Oklahoma. It is beyond dispute that the potential loss of life constitutes a cognizable injury for purposes of Article III standing. As Judge Learned Hand famously wrote in an almost identical case decades ago: "Obviously [a petitioner facing execution by the state] has actually the greatest possible interest in serving the remainder of his federal sentence." *United States ex rel. Buchalter v. Warden of Sing Sing Prison*, 141 F.2d 259, 259 (2d Cir. 1944).

Second, Petitioner has sufficiently alleged causation. He asserts that Oklahoma's refusal to return him to the custody of the United

States, despite his federal life sentence, is the direct action that will lead to his execution. This easily satisfies the requirement that his injury, the imminent loss of life, is fairly traceable to the challenged conduct of the state. As the Supreme Court has repeatedly emphasized, proximate cause is not a requirement of Article III standing; rather, it is enough that the injury be fairly traceable to the defendant's acts or omissions. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).

Third, Petitioner has alleged redressability. If Petitioner is correct on the law and succeeds in obtaining a judicial order requiring Oklahoma to return him to federal custody, his injury would be redressed, as his federal life sentence would prevent his execution (absent some form of extraordinary release or pardon). Accordingly, the Court concludes that Petitioner has sufficiently alleged that his injury is likely to be redressed by a favorable decision. See *Lujan*, 504 U.S. at 561; see also *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185–86 (2000) (noting that a sanction effectively abating ongoing illegal conduct provides redress for standing purposes).

11

Having found that Petitioner meets the minimal requirements for standing, the Court now turns to the substantive legal questions, where the outcome is determined not by the existence of jurisdiction, but by the controlling statutory framework, binding precedent, and constitutional limits on judicial authority.

## A.  Count I - WRIT OF HABEAS CORPUS

The Constitution, wisely and intentionally, assigns distinct responsibilities to the coordinate branches of our federal government. The role of the judiciary is to say what the law is, not to repurpose statutes, override executive discretion, or disrupt the sovereign partnership between state and federal authorities. The habeas petition before this Court urges such a disruption. The Constitution does not permit it.

Petitioner, now in the custody of the State of Oklahoma, asks this Court to compel federal authorities to reassert jurisdiction over him, despite the fact that he was lawfully transferred under the authority of 18 U.S.C. § 3623 and now awaits execution of a lawfully imposed state sentence for the murder of a 77-year-old woman. He seeks not liberty

from unlawful restraint, but a preferred jurisdiction for that restraint. That is not a claim the Writ of Habeas Corpus was designed to entertain.

### 1. Jurisdiction Fails: No Federal Custody Exists

Habeas relief requires more than dissatisfaction with circumstances, it requires jurisdiction. Jurisdiction in habeas lies with the immediate custodian. See *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). At the time of filing, Petitioner was in state custody. The BOP had relinquished control. The only lawful custodian is the Oklahoma State Penitentiary. No federal official has the power to produce him before this Court. Accordingly, the federal respondents are not proper parties.

### 2. The Transfer Was a Lawful Act of Executive Discretion

Even if this Court could reach the merits, Petitioner's challenge collapses on statutory ground. Under 18 U.S.C. § 3623, the BOP may transfer a federal inmate to state custody when three conditions are met: (1) a request by the state; (2) a certified judgment of conviction; and (3) a public interest determination by the BOP Director. All three were satisfied here. Attorney General Drummond's formal request was submitted on January 23, 2025. The judgment of conviction was attached

(Docket No. 2 Attachment 2-1). On February 28, 2025, the Acting BOP Director, in concurrence with U.S. Attorney General Bondi, found that transfer served the public interest, citing finality, public safety, and the sovereign interest of Oklahoma in executing its own sentence (Docket No. 2 Attachment 2-5).

### 3. A Change in Administration, Not a Change in Law

The completion of Petitioner's transfer to Oklahoma in 2025 followed years of federal delay despite clear statutory authority under 18 U.S.C. § 3623. Guided by the Executive Order Restoring the Death Penalty and Protecting Public Safety, the Attorney General and BOP Director determined that the public interest required honoring Oklahoma's sovereign right to carry out its lawful sentence. This decision was not the product of mere administrative change but reflected the executive branch's constitutional role in maintaining the balance of powers between sovereigns. It closed a long chapter of litigation and administrative review, reinforcing the principle that the federal government must respect state criminal judgments once all legal processes are complete.

### 4. The Public Interest Was Lawfully Determined—And Constitutionally Unreviewable

The phrase "public interest" is not an invitation to judicial second-guessing. It is a delegation of authority to the Executive. Congress did not define the term in § 3623. It imposed no limiting criteria, no checklists, no balancing tests. That silence is purposeful. Discretion here belongs to the BOP Director, and to him alone. Federal courts have no business second-guessing that determination. As the Ninth Circuit held, the priority of custody between sovereigns is "an executive, not a judicial, function." *United States v. Warren*, 610 F.2d 680, 684 (9th Cir. 1980); see also *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922). Judicial review of § 3623 transfer decisions is not authorized, nor constitutionally proper.

### 5. Due Process Does Not Protect Against Transfer Between Sovereigns

Petitioner's due process arguments must be carefully parsed. The Constitution does not guarantee a prisoner the right to be held by his preferred sovereign. See *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Transfer from federal to state custody, even when it brings a harsher penalty, is not an "atypical and

significant hardship" sufficient to trigger constitutional protection. See *Moody v. Holman*, 887 F.3d 1281, 1290–91 (11th Cir. 2018). Petitioner claims minimal due process rights to notice and hearing before transfer. However, Petitioner has cited no controlling authority for the proposition he has a constitutional liberty interest in his custodial location. The fact or duration of confinement, not the custodial situs, invokes due process. Petitioner's reliance on *Moody*, 887 F.3d 1281 (11th Cir. 2018) fails, as that case expressly declined to extend due process rights to custodial transfers. Procedural due process protects against deprivations of liberty without adequate notice and opportunity to be heard; substantive due process protects against government actions so egregious as to shock the conscience. Here, the Court finds no procedural due process violation because Petitioner has had ample opportunity to challenge the legality of his confinement through multiple judicial avenues. Nor is there a substantive due process violation, as Petitioner has not demonstrated that the discretionary transfer itself, authorized by statute and long sanctioned by Supreme Court precedent, constitutes the kind of arbitrary or conscience-shocking conduct the Constitution forbids. The Petitioner's

punishment remains a lawful consequence of his convictions. His confinement is not unconstitutional merely because it is now carried out by a different sovereign.

The judiciary does not sit in judgment of executive policy decisions that lie within the lawful discretion of our coequal branches. This Court's role is not to revise statutory standards, reallocate custody between sovereigns, or frustrate the execution of a state-imposed sentence in the name of preference. The law is clear. The facts are undisputed. Petitioner's invocation of due process is not supported by the evidence nor the law.

### 6. Primary Jurisdiction Misapplied—And Statutory Interpretation Under *Loper Bright*

The Court next turns to Petitioner's reliance on *United States v. Cole*, 416 F.3d 894 (8th Cir. 2005), which misstates the doctrine of primary jurisdiction. Primary jurisdiction defines the prosecuting sovereign's priority, not an absolute barrier to voluntary inter-sovereign cooperation. As the Supreme Court explained in *Ponzi*, 258 U.S. 254, sovereigns may cede temporary custody by comity without surrendering ultimate jurisdiction. Petitioner's assertion that his federal sentence precludes

17

any transfer to Oklahoma mischaracterizes the cooperative flexibility granted by federal law.

Nor can Petitioner's argument prevail on statutory grounds. His reading of 18 U.S.C. §§ 3621, 3623, and 3624 lacks textual and structural coherence. Section 3621(a) places a federal prisoner in BOP custody; Section 3621(b) grants BOP broad discretion to designate the place of imprisonment, including interstate or state facilities; and Section 3623 adds specific authority for formal transfers to state custody when in the public interest.

Petitioner insists § 3624's "release" provisions limit BOP's transfer power, but no court has so held. Transfers do not constitute "release" under § 3624; they reflect routine administrative management of physical custody, which Congress has long vested in BOP's discretion. Importantly, while BOP's longstanding operational understanding, as reflected in its Program Statements (Docket No. 2 Attachment 2-3), may be informative, the Court now has an independent duty, under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), to exercise its own judgment when interpreting statutory text. No longer may a court defer

to an agency's interpretation simply because the statute is ambiguous; instead, it must read the statute in accordance with its plain meaning, structural context, and coherent integration into the statutory scheme.

Applying that standard here, the phrase "prior to his release" plainly ensures that transfers under § 3623 occur before a prisoner exits federal custody altogether, not that they must wait until the last days or weeks of a sentence. Reading the statute as Petitioner urges would distort its temporal clause, creating an artificial restriction untethered from the statutory text or purpose. Courts are obligated to give each provision its fair meaning, but not to adopt strained readings that ignore context or purpose. Under the Court's independent assessment, § 3623 authorizes the BOP to transfer prisoners to state custody before the end of a federal sentence when it serves the public interest, consistent with the broader statutory framework governing federal custody under §§ 3621 and 3624.

In sum, whether framed as a constitutional challenge, a misapplication of primary jurisdiction, or a statutory misreading, Petitioner's arguments fail.

## B. Count II – ULTRA VIRES VIOLATION OF 18 U.S.C. § 3623

Petitioner contends that the transfer from federal to state custody violated 18 U.S.C. § 3623, exceeding the lawful authority granted to the BOP. The Court rejects this argument.

First, the statute's plain text provides broad discretionary authority to the BOP. Section 3623 authorizes the Director to transfer federal prisoners to state or local authorities "if requested by the appropriate state or local official" and upon finding that such a transfer is "in the public interest." Congress did not define the term "public interest" nor impose a rigid checklist or mandatory criteria. Instead, it entrusted the Executive Branch, and specifically the BOP Director, with discretion to weigh the facts, circumstances, and policy considerations involved.

Second, the record demonstrates that all statutory prerequisites were satisfied here. The State of Oklahoma submitted a formal request for transfer. A valid judgment of conviction was attached. The Acting BOP Director, in coordination with the Attorney General, determined that transfer served the public interest, citing finality, public safety, and the sovereign interest of the state in carrying out its lawful sentence.

That determination is precisely the type of discretionary, executive judgment § 3623 was designed to place outside the judiciary's reach.

Third, Petitioner's ultra vires theory misinterprets the separation of powers. Courts do not sit to second-guess or override lawful exercises of executive discretion simply because a litigant is dissatisfied with the outcome. As the Supreme Court has long held, absent a clear statutory violation or constitutional transgression, it is not the role of the judiciary to interfere with how the Executive Branch carries out delegated authority. See *Ponzi*, 258 U.S. 254, 261–62 (1922) (recognizing the Executive's primary authority to coordinate inter-sovereign custody arrangements); *United States v. Warren*, 610 F.2d 680, 684 (9th Cir. 1980) (describing intergovernmental custody decisions as executive, not judicial, functions).

Finally, even if the Court were to accept Petitioner's invitation to scrutinize the policy basis for the transfer, the factual record offers no support for finding arbitrary or unlawful action. The BOP's decision followed the statutory framework, aligned with an express Executive Order (Restoring the Death Penalty and Protecting Public Safety), and

reflected reasoned, lawful executive discretion (Docket No. 2 Attachment 2-4).

For all these reasons, the Court finds no basis to conclude that the BOP's transfer decision constituted an ultra vires violation of § 3623. The law was followed. The discretion was lawfully exercised. Petitioner's dissatisfaction does not transform a lawful act into an unlawful one.

### C. Count III - DECLARATORY RELIEF

Petitioner's request for declaratory relief under 28 U.S.C. § 2201, seeks a judicial declaration that his transfer from federal custody to the ODOC, effectuated under 18 U.S.C. § 3623, was unlawful. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration," but only where an actual case or controversy exists. The statute is permissive, not mandatory; it authorizes but does not compel courts to issue declaratory judgments. Moreover, it does not expand subject matter jurisdiction but merely provides a remedy where jurisdiction is otherwise proper.

Petitioner asserts that the BOP exceeded its statutory authority

under § 3623 by authorizing his transfer to Oklahoma for execution before completing his federal life sentence. Specifically, he contends the BOP failed to adhere to the "public interest" standard and the temporal requirement of transfer "prior to release."

As noted in other sections, the Court rejects these arguments for several reasons. Section 3623 expressly vests the BOP Director with authority to determine whether transfer is in the public interest. Federal courts are traditionally reluctant to second-guess discretionary agency determinations absent a clear violation of statutory limits. The statute does not mandate an exclusive list of factors the Director must consider, nor does it prohibit early transfer so long as the federal government consents. Indeed, the statute contemplates cooperation between sovereigns and leaves the timing and conditions of transfer within executive judgment.

Petitioner's claim that transfer before completion of his federal sentence inherently violates § 3623 misreads the text. The "prior to release" clause is a condition permitting transfer, not a prohibition against earlier action when the BOP finds the public interest served. The

statute does not impose an absolute bar on transfers before a sentence expires, and longstanding principles of comity allow the federal government to relinquish primary custody when appropriate.

As the Supreme Court recognized over a century ago, the federal government retains the sovereign prerogative to waive its primary custody over a prisoner and deliver that individual to a state for prosecution, sentencing, or execution. See <u>Ponzi</u>, 258 U.S. at 260–62. Petitioner's invocation of the Declaratory Judgment Act cannot override this settled principle or convert a lawful intergovernmental transfer into an ultra vires act.

This Court shall exercise its discretion to decline declaratory relief. Courts are not required to issue advisory opinions or declarations where, as here, Petitioner's substantive claims fail as a matter of law and no live controversy remains once those claims are resolved. The Court recommends the request for declaratory relief be Denied.

### D. Count IV - OKLAHOMA HAS WAIVED JURISDICTION OVER PLAINTIFF DUE TO A LACK OF PURSUIT AND INACTION

Petitioner's argument that Oklahoma has forever waived its

sovereign jurisdiction is without merit. Approximately two decades ago, a jury found the Petitioner guilty of murdering 77-year-old Mary Bowles. Oklahoma's courts tried him, convicted him, and twice sentenced him to death. Since that day, the State of Oklahoma has taken step after step, filing motion after motion, appealing ruling after ruling and pressing forward through federal courts, state courts, habeas challenges, execution protocol challenges, McGirt claims, and administrative hurdles. All to uphold the lawful sentence pronounced by an Oklahoma jury on Oklahoma soil for an Oklahoma crime. This is a sovereign state, standing over decades, asserting its right and duty to enforce its criminal judgments. The Supreme Court has long held that inter-sovereign custody arrangements are matters of comity, not waiver. See *Ponzi*, 258 U.S. 254 (1922), and the Tenth Circuit has rejected similar attempts to relitigate jurisdiction after valid convictions. *Hanson*, 797 F.3d 810 (10th Cir. 2015); *Fletcher v. Lengerich*, No. 23-1395, 2024 WL 1155260 (10th Cir. Mar. 18, 2024)). The Court finds no merit in Petitioner's claim that Oklahoma has waived its jurisdiction. Under bedrock constitutional principles, sovereign authority is preserved unless expressly,

unequivocally renounced, and mere delay or intergovernmental complexity does not rise to that level. For over a century, the Supreme Court has held that custody transfers between sovereigns are cooperative acts, not jurisdictional surrenders. See *Ponzi*, 258 U.S. 254 (1922). Here, Oklahoma has remained steadfast, defending its judgment through trial, appeal, post-conviction challenges, and federal habeas proceedings. The Court affirms that the state has at all times retained its sovereign right to enforce the lawful sentence imposed upon Petitioner.

With the question of waiver resolved, the Court turns to the final legal claim.

## III. PETITIONER'S MOTION FOR STAY OF EXECUTION

The Court turns now to the Petitioner's Request for a Stay of Execution (Docket No. 17). As the Supreme Court has made plain, federal courts must weigh four factors in assessing such a request: (1) whether the applicant has made a strong showing of likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest

lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009); see also *Glossip v. Gross*, 576 U.S. 863, 876 (2015); *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

Applying these standards, the Court finds no basis for granting the requested stay. "[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." See *Hill*, 547 U.S. 573, 584 (2006).

First, on the likelihood of success: Petitioner has not made a strong showing or, indeed, any persuasive showing that he is likely to prevail on the merits of his claims. As reflected above, this Court is recommending Petitioner's Petition for Writ of Habeas Corpus Pursuant To 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief (Docket No. 2) be denied. The Supreme Court has cautioned that last-minute stays must rest on more than speculative or tenuous arguments. See *Glossip*, 576 U.S. at 876.

Second, the irreparable harm factor, while weighty in the context of an execution, does not carry the day where the underlying merits are

lacking. As the Supreme Court explained in _Hill_, 547 U.S. at 584, and _Nelson_, 541 U.S. at 649-50, a stay cannot be granted solely on the ground that irreparable injury is possible; the applicant must also demonstrate a viable claim that warrants relief. Petitioner here offers no such claim.

Third, as to injury to other parties, the Court is mindful that the State of Oklahoma, as the representative of the sovereign interests of its citizens and the victims' families, has a profound interest in the timely and lawful enforcement of criminal judgments. A stay at this stage would impose additional burdens, costs, and delays upon the State and would frustrate the finality long sought by the victim's loved ones. See _Glossip_, 576 U.S. at 876.

Finally, the public interest does not favor a stay. The public has an interest in the consistent and predictable enforcement of criminal judgments, particularly those affirmed after years of judicial review. The Supreme Court has recognized that equitable relief in this context must account for both the rights of the condemned and the societal interest in the administration of justice. See _Hill_, 547 U.S. at 584. On balance, the public interest lies in the faithful execution of a sentence lawfully

imposed.

For these reasons, the Court finds Petitioner has failed to carry his burden and recommends the request for a stay is be Denied.

## IV.   CONCLUSION

The law is not a thing of haste, nor does it bend to the whims of those who seek to escape its reach. It is a steady force, unmoved by delay, unswayed by obstruction, and in the case of Petitioner, it has marched forward with unwavering purpose. The State of Oklahoma, in pursuit of justice for the murders of Mary Bowles and Jerald Thurman, has met every challenge with resolve, honoring both the rights of the accused and the solemn duty owed to the victims.

Petitioner has been granted the full measure of due process, his conviction tested and retested by the highest tribunals of our land. Petitioner was convicted by a jury of his peers, sentenced to death according to the law, and granted the full benefit of appellate review. He challenged his sentence in the Oklahoma Court of Criminal Appeals, United States District Court for the Northern District of Oklahoma, the Tenth Circuit, and the Supreme Court of the United States. He sought

relief under state post-conviction proceedings, federal habeas review, and even attempted to upend his conviction through a jurisdictional challenge under *McGirt v. Oklahoma*. At every stage, his claims have been heard, considered, and rejected. The courts have remained steadfast: the verdict was just, the process was fair, and the sentence stands.

The State of Oklahoma, having secured its lawful judgment, was met with resistance from the previous Presidential administration, which declined for years to yield its prisoner to the authority of the state. Petitioner challenged his transfer from federal custody back to Oklahoma custody in federal courts in Texas and Louisiana. But the law does not falter in the face of delay. It moves with patience, yet it does not forget.

The rule of law means more than just the right to be heard. It also means that once all rights have been exercised, once every argument has been weighed, the final judgment of the courts must be carried out. Petitioner has not been denied a single protection afforded by our Constitution. He has been given every process due.

The Constitution does not promise endless delay. It promises fairness. And fairness has been delivered. Petitioner has had his day in

court, many days, in fact. When the process has been honored, the evidence tested, the law applied, and the courts at every level have spoken, then comes the final responsibility: to give meaning to the verdict and allow justice to prevail. Due process is not an infinite loop. It is a path with an endpoint. And for Petitioner, that endpoint has arrived.

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT that Petitioner's Motion Under 28 U.S.C. § 2241 seeking hybrid habeas corpus, declaratory, and injunctive relief (Docket No. 2) should be **DENIED**. The Motion to Dismiss by the Federal Respondents (Docket No. 14) should be **GRANTED**.

IT IS FURTHER RECOMMENDED that Petitioner's Request for a Stay of Execution (Docket No. 17) should be **DENIED**. Petitioner should remain in the custody of the State of Oklahoma and his execution should proceed as scheduled.

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file objections with supporting brief. The failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate

review of the judgment of the District Court based on such findings.

IT IS SO ORDERED this _8th_ day of May, 2025.

_____

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE