UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN FITZGERALD HANSON,<br><br>                                *Petitioner*,<br><br>v.<br><br>CHRISTE QUICK, Warden, Oklahoma State Penitentiary; STEVEN HARPE, Director of the Oklahoma Department of Corrections; DANNON COLBERT, Acting Regional Director, U.S. Department of Justice, Federal Bureau of Prisons; and WILLIAM W. LOTHROP, Acting Director, U.S. Department of Justice, Federal Bureau of Prisons,<br><br>                              *Respondents*. | District Court No. 25-cv-00081-RAW<br><br>CAPITAL CASE |

## **OKLAHOMA RESPONDENTS' RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR STAY OF EXECUTION**

With his habeas petition fully briefed, Petitioner has now moved for a stay of his upcoming execution. But as an initial procedural matter, there appears to be no need for a stay. Petitioner's execution is scheduled for June 12, 2025, which is over a month away. And the Petition has been fully briefed for weeks, with the response (Oklahoma, Doc. 7) and motion to dismiss (United States, Doc. 14) filed on April 4, 2025, and the respective reply and response filed on April 21, 2025. Moreover, just today the Magistrate Judge issued his Findings and Recommendations. Doc. 18. Thus, there seems to be sufficient time for the Court to rule, without the necessity of a stay or delay of execution. In any event, for reasons already explained, Petitioner is highly unlikely to succeed in showing that the United States transgressed federal law by transferring him to Oklahoma. As a substantive matter, then, a stay would be inappropriate as well. And none of the equities favors Petitioner, a convicted murderer seeking to avoid facing justice for his 1999 slaying of Oklahoman Mary Bowles. The Court should therefore deny Petitioner's motion for a stay.

1

Like anyone else seeking a stay, a death-row inmate seeking a stay of execution must: (1) make a "strong showing" that he is likely to succeed on the merits; (2) show he is likely to suffer irreparable injury if the court denies him the stay; (3) show that the threatened injury, absent the injunction, outweighs the State's injury from the stay; and (4) show that the stay is not adverse to the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433–34. In the execution context, in particular, a court's decision whether to grant a stay "must be sensitive to the State's strong interest in enforcing its criminal judgments." *Hill*, 547 U.S. at 584. "Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Id.* And, of utmost importance here, for executions "[l]ast-minute stays should be the extreme exception, not the norm." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019); *see also Dunn v. Price*, 587 U.S. 929, 929 (2019) (per curiam); *Hill*, 547 U.S. at 584.

Although the Magistrate Judge has already issued his Findings and Recommendations, including a recommendation that Petitioner's stay motion be denied, Oklahoma responds herein out of an abundance of caution. For reasons articulated in substantial depth already, both by the Respondents and by the Magistrate Judge, Petitioner cannot succeed on any of the four prongs for a stay, much less all of them. In sum, Petitioner is highly unlikely to succeed in showing that his transfer to Oklahoma somehow contravened a federal law (18 U.S.C. § 3623) mandating such transfers if they are in the public's interest, especially when he does not have a liberty interest in serving a longer life sentence in federal prison. He also cannot rely on a justly bestowed death sentence for irreparable harm, and another delay here would undeniably harm the State, the public, and the family of Mary Bowles. For brevity's sake, Oklahoma incorporates its previous arguments here. *See* Doc. 7. In addition, the State adds the following responses.

*First*, right out of the gate, Petitioner cites two Supreme Court cases to argue that he should not be executed before a decision on the merits of his habeas petition. Motion to Stay ("Mot.") at 1 (citing *Barefoot v. Estelle*, 463 U.S. 880 (1983); *Lonchar v. Thomas*, 517 U.S. 314 (1996)). But even assuming those cases are still valid, neither comes close to mandating a stay here. Applying *Barefoot*, *Lonchar* just states that "when a district court is faced with a request for a stay in a first federal habeas case … it is obligated to address the merits and must issue a stay to prevent the case from becoming moot." *Lonchar*, 517 U.S. at 320. This is not a "first federal habeas case" for Petitioner. *See* Doc. 7 at 4, 9, 38–39. And both *Barefoot* and *Lonchar* explained that "stays in second and successive federal habeas corpus petitions present a different issue." *Lonchar*, 517 U.S. at 321 (quoting *Barefoot*, 463 U.S. at 895) (cleaned up). Putting this difference aside, however, *Lonchar* discussed in detail the "ample discretionary authority" district courts have "in dealing with first federal habeas petitions." *Id.* at 325. Even there, a "district court is authorized to dismiss a petition summarily," it may "tailor the proceedings to dispose quickly, efficiently, and fairly" of the petition, and it may "take such other action as the judge deems appropriate." *Id.* at 320, 325. In short, "the district court is afforded substantial discretion to expedite proceedings." *Id.* at 326. Here, as discussed above, there is more than a month remaining until Petitioner's execution, and the issues have already been briefed for weeks. Sufficient time remains for this Court to issue a ruling on the merits. Petitioner claims a "stay of execution is now needed to allow the case to proceed in orderly fashion," Mot. at 2, but this is simply not true. This case has proceeded in an orderly fashion, and it presumably will continue to do so absent a stay.

*Second*, Petitioner also asserts that the central statute in question here, 18 U.S.C. § 3623 ("Section 3623"), is "inapplicable." Mot. at 3; *see also id.* ("the statutory framework does not fit Mr. Hanson's transfer"). But if Section 3623 is inapplicable to inmates with life sentences, then nothing would prohibit the U.S. Attorney General from transferring Petitioner to Oklahoma. The State mentioned this briefly in its habeas response, Doc. 7 at 35 n.9, but it is worth raising more prominently

3

here. Prior to Section 3623 and its predecessors, when there was no "express authority authorizing the transfer of a federal prisoner to state court," the Supreme Court nevertheless had "no doubt" that this authority existed. *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922). This was because "the power and discretion to practice the comity in such matters … is vested" in the Attorney General. *Id.* at 262. Moreover, federalism required "a spirit of reciprocal comity and mutual assistance" in such matters, and a defendant "should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other." *Id.* at 259–60. In the same vein, the Court wrote that a defendant "may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it." *Id.* at 260.

Thus, if Section 3623 does not apply to Petitioner, then the United States still had the straightforward power and discretion to transfer him to Oklahoma. There is nothing in Section 3623, after all, stripping the Attorney General of authority or prohibiting the Attorney General from acting. Rather, its purpose is to *mandate* transfers in certain circumstances. If "prior to release" in Section 3623 really means that prisoners serving life sentences are not contemplated by Congress with that provision, as Petitioner argues, then the U.S. Attorney General would still retain the authority to transfer such prisoners. Petitioner, that is, "should not be permitted to use the machinery of" the United States "to obstruct" his punishment in Oklahoma. *Ponzi*, 258 U.S. at 259–60. Rather, the "spirit of … comity" shown by the U.S. Attorney General should be upheld. *Id.* at 259.

*Third,* Petitioner continues to claim that Oklahoma's interpretation of Section 3623 renders the phrase "prior to release" superfluous, violating "one of the most basic interpretive canons." Mot. at 4 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Oklahoma has already explained why this is not so, Doc. 7 at 33–35, as has the Magistrate Judge, Doc. 18 at 18–19. What is worth adding is that, even ignoring these explanations, "[t]he canon against surplusage is not an absolute rule," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013), but "merely an interpretive aid," *Jordan v. Maxim*

4

*Healthcare Servs., Inc.*, 950 F.3d 724, 743 (10th Cir. 2020) (citation omitted); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006) ("While it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (similar). Indeed, the Tenth Circuit has recognized that "[s]ometimes drafters … do include words that add nothing of substance." *Jordan*, 950 F.3d at 743 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012)). Important here, the surplusage canon "cannot trump the plain meaning of the statute." *United States v. Montgomery*, 578 F. Supp. 3d 54, 74 (D.D.C. 2021). And the plain meaning of Section 3623 is to require and facilitate transfers of federal prisoners to State hands—not to protect murderers from just punishment just because they are serving a federal life sentence. The canon against surplusage is not a get-out-of-execution-free card here, no matter how much Petitioner attempts to treat it as such.

*Fourth,* Petitioner claims that his execution will constitute "clear, serious, and irreversible" harm. Mot. at 5. Execution is the ultimate punishment, to be sure, but Petitioner has fully *earned* that remedy by killing Mary Bowles. "[I]n the eyes of the law, petitioner does not come before the Court as one who is 'innocent', but, on the contrary, as one who has been convicted by due process of law of [a] brutal murder[]." *Herrera v. Collins*, 506 U.S. 390, 399–400 (1993). Petitioner cannot rely on a valid conviction and sentence as a "harm" justifying a stay. At minimum, this factor is severely diminished by the fact that Petitioner is not claiming actual innocence or anything similar. Petitioner quotes former Supreme Court Justice Powell, Mot. at 6, but ignores that in the cited concurrence, Justice Powell was explaining his vote to *lift* a stay of execution. In so doing, Justice Powell wrote as follows: "For our system of justice to function effectively, litigation in cases such as this one must cease when there is no reasonable ground for questioning either the guilt of the defendant or the constitutional sufficiency of the procedures employed to convict and sentence him." *Wainwright v. Booker*, 473 U.S. 935, 937 (1985) (Powell, J., concurring). This counsels firmly *against* a stay.

5

*Fifth*, Petitioner claims that the "several years the State waited to establish a new protocol undermines any argument regarding the purported urgency" here. Mot. at 6. This is misleading. Contrary to Petitioner's claim (and out-of-context transcript reference), the multi-year delay in executions in Oklahoma was *not* primarily due to development of a new protocol. To the contrary, executions were delayed for years because Oklahoma was searching for access to the drugs required by Oklahoma statute. *See* Press Release, *State officials announce plans to resume execution by lethal injection*, Okla. Dep't of Corr. (Feb. 13, 2020) ("[T]he state has found a reliable supply of drugs to resume executions by lethal injection.").[1] Once those drugs were secured, the new protocol was released and executions would have restarted—except Petitioner and his co-inmates pursued a lawsuit challenging the constitutionality of the new protocol. Even though the Western District's Judge Friot would later emphasize that Petitioner and his co-inmates fell "well short" of making their case, *Glossip v. Chandler*, No. CIV-14-0665-F, 2022 WL 1997194, at *21 (W.D. Okla. June 6, 2022), back in 2020 Judge Friot asked the Attorney General not to schedule the plaintiffs' executions until their claims were adjudicated. *See, e.g.*, Doc. 297, *Glossip*, No. CIV-14-0665-F (W.D. Okla. March 4, 2020) ("[T]he court desires to receive representations from the defendants as to whether the State of Oklahoma intends to seek execution dates which would, if left in place, impose unreasonable burdens on the court and counsel."). Indeed, in the very transcript Petitioner cites, Judge Friot closed by saying that "if we should have any indication that [executions] will happen, I will be, to put it mildly, immediately available." Doc. 321, *Glossip*, No. CIV-14-0665-F, at 31 (W.D. Okla. May 21, 2020). In short, years of delay were attributable in large part to Petitioner's meritless claims and Oklahoma's search for drugs, which hardly justifies delaying justice even longer here.

---

[1] Available at https://oklahoma.gov/doc/newsroom/2020/state-officials-announce-plans-to-resume-execution-by-lethal-injection.html.

*Sixth*, Petitioner claims that the "public interest is not served by executing someone before they have had a full and fair opportunity to avail themselves of legal process." Mot. at 7. As is his norm, Petitioner makes no mention of the harm to Mary Bowles's family—the most important members of the public here—that will be caused by more delay. Petitioner did not care about Mary Bowles in life, and he certainly does not care about her in death. And Petitioner's continued insistence that he has not had due process or notice sufficient for the circumstances is truly galling. No one is "rushing to judgment" here. Mot. at 7 (citation omitted). Petitioner murdered Mary Bowles **26 years ago**, and he has filed numerous lawsuits in numerous courts since then, all to avoid facing justice for his horrific crime. The idea that a quarter century of legal proceedings and lawsuits is not sufficient process is preposterous. Even on this issue, Petitioner has now fully briefed his argument in front of two different federal courts. He is entitled to nothing more than that. Enough is enough.

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioner's motion for a stay.

Respectfully submitted,

s/ *Zach West*
---
GARRY M. GASKINS, II, OBA #20212
   *Solicitor General*
ZACH WEST, OBA # 30768
   *Director of Special Litigation*
CULLEN D. SWEENEY, OBA # 30269
WILL FLANAGAN, OBA #35110
   *Assistant Solicitors General*

CAROLINE HUNT, OBA # 32635
   *Deputy Attorney General*
MICHEL A. TRAPASSO, OBA # 35298
   *Assistant Attorney General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Cullen.Sweeney@oag.ok.gov
William.Flanagan@oag.ok.gov
Caroline.Hunt@oag.ok.gov
Michel.Trapasso@oag.ok.gov
*Counsel for Oklahoma Respondents*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of May, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record who are registered participants.

                                         *s/ Zach West*
                                         ZACH WEST