UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN FITZGERALD HANSON,<br><br>PETITIONER,<br><br>v.<br><br>CHRISTE QUICK, Warden, Oklahoma State Penitentiary;<br><br>STEVEN HARPE, Director of the Oklahoma Department of Corrections;<br><br>DANON COLBERT, Acting Regional Director, U.S. Department of Justice, Federal Bureau of Prisons; and<br><br>WILLIAM W. LOTHROP, Acting Director, U.S. Department of Justice, Federal Bureau of Prisons,<br><br>RESPONDENTS. | Case No. 25-cv-0081-RAW-JAR<br><br><br><br><br><br><br><br><br><br>CAPITAL CASE<br>Execution set for June 12, 2025 |

**PETITIONER JOHN FITZGERALD HANSON'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION**

**I.     Introduction.**

As Heriberto Tellez, former Regional Director of the South Central Region of the Federal Bureau of Prisons, correctly stated on October 17, 2022,

> Title 18 U.S.C. § 3623 provides for the transfer of a federal prisoner to state custody prior to satisfaction of a federal obligation . . . [o]rdinarily the Federal Bureau of Prisons effectuates such a transfer, when qualified, within the last 90 days of the inmate's satisfaction of the Federal sentence.
>
> Inmate Hanson is in the primary jurisdiction of federal authorities, and I am unaware of any indication another sovereign may properly possess primary

1

> jurisdiction of him. On June 28, 2000, the Honorable H. Dale Cook, United States District Judge for the Northern District of Oklahoma, sentenced inmate Hanson to a term of life imprisonment, which he has been serving since that date.

Doc. 2, Exh.1, p. 9. Mr. Tellez's statement tracks with the Bureau of Prison's BOP Program Statement No. 5140.44 (Feb. 16, 2024), the very title of which is "Transfer of a Prisoner to State Custody Prior to Release from the Federal Sentence." Doc. 2, Exh. 3. It provides that "[*a*]*ny such transfer* [under § 3623] should occur within a reasonable period of time before the inmate's release from a federal sentence, ordinarily within the last 90 days." *Id.* at 2 (emphasis added).

The State of Oklahoma filed suit against Mr. Tellez. *Oklahoma v. Tellez*, *et al.,* No. 7:22-CV-108-O (N.D. Tex. Oct. 25, 2022) (Dkt. 1). The suit alleged a violation of 18 U.S.C. § 3623 and attempted to use the statute to force the federal government (the sovereign with primary jurisdiction) to transfer Mr. Hanson to Oklahoma. The "Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus" contained three claims for relief: "Count One: Writ of Habeas Corpus—28 U.S.C. § 2241," "Count Two: *Ultra Vires* Violation of 18 U.S.C. § 3623," and "Count Three: Declaratory Relief." *Id.* Oklahoma filed this hybrid § 2241 petition/complaint for declaratory and injunctive relief in the United States District Court for the Northern District of *Texas* trying to get Mr. Hanson moved to *Oklahoma* from his physical custody at USP Pollock in *Louisiana*.

Citing *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), Judge Reed O'Connor of the United States District Court for the Northern District of Texas quickly dismissed Oklahoma's § 2241 habeas count because it was not brought in the district court where Mr.

Hanson was confined (i.e., the United States District Court for the Western District of Louisiana). *Oklahoma v. Tellez,* No. 7:22-CV-108-O (N.D. Tex. Nov. 17, 2022) (Dkt. 23 at 4-6).[1]

With the § 2241 action out of the way, Judge O'Connor noted § 3623 does not expressly preclude judicial review, and found "an *ultra vires* challenge is the proper means by which Plaintiffs may challenge the agency's alleged violation of its statutory authority, as they have done here. *See Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1172–73 (D.C. Cir. 2003) (noting availability of *ultra vires* review despite foreclosure of APA review)." *Oklahoma v. Tellez,* No. 7:22-CV-108-O (N.D. Tex. Nov. 17, 2022) (Dkt. 23 at 6-7). The judge then ordered additional briefing on the meaning of the phrases "public interest" and "prior to his release," directing the parties to employ traditional tools of statutory construction. *Id.* at 9.

After further briefing, Judge O'Connor concluded 18 U.S.C. § 3623 does not preclude all judicial review but dismissed the case for lack of jurisdiction. *Oklahoma v. Tellez,* No. 7:22-CV-108-O (N.D. Tex. Dec. 13, 2022) (Dkt. 28 at 4-5). Judge O'Connor's order zeroed in on the "public interest" component of the statute, and the wide discretion *that* phrase provides, but notably found Oklahoma was seeking to re-write 18 U.S.C. § 3623 by urging

---

[1] In contrast, the instant § 2241 action was filed where Mr. Hanson is confined, and this Court may grant habeas relief to a prisoner who "is unlawfully confined in the wrong institution" because "his grievance is that he is being unlawfully subjected to physical restraint, and . . . habeas corpus has been accepted as the specific instrument to obtain release from such confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973) (citing *In re Bonner*, 151 U.S. 242 (1894), and *Humphrey v. Cady*, 405 U.S. 504 (1972)) (footnote omitted).

*two* glaring deletions of the statutory text: "*The Director of BOP **shall** order a prisoner be transferred [to state custody] **~~prior to his release~~** ... if **~~the Director finds that~~** the transfer is in the public interest.*" Oklahoma v. Tellez, No. 7:22-CV-108-O (N.D. Tex. Dec. 13, 2022) (Dkt. 28 at 5).

The posture and *ultra vires* actions are different in the case at bar, and where Judge O'Connor's focus was on "public interest," here it is squarely on "prior to his release." Like Oklahoma did before, the analysis of the Magistrate Judge's Findings and Recommendation (Doc. 18) also seeks to write the "prior to his release" temporal clause out of the statute.

The Findings and Recommendation states that the "prior to his release" phrase "ensures that transfers under § 3623 occur before a prisoner exits federal custody altogether." Doc. 18 at 19. But reading it as merely descriptive—*i.e.*, as referencing the obvious fact it is impossible to "transfer" a prisoner to State custody *after* he has been set free—would render it inoperative; the statute would have exactly the same meaning with or without the clause. This flouts "one of the most basic interpretive canons, that 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States,* 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see also, e.g.*, *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 825 (2018) (applying this canon). The Federal Defendants in the past agreed. *See Oklahoma v. Tellez,* No. 7:22-CV-108-O (N.D. Tex.) (Doc. 26 at 6).

Giving meaning to "prior to his release" not only is required under the law, and required under the cardinal rules of statutory construction, it also is the only way § 3623 makes sense within Congress's statutory scheme. In this regard, the key words and phrases

of the statutory scheme are crucial. It all starts with primary jurisdiction.

**Primary jurisdiction**. The Findings and Recommendation apparently finds fault with *United States v. Cole*, 416 F.3d 894, 896-97 (8th Cir. 2005), but does not seem to dispute the principle cited that primary jurisdiction continues until the sovereign relinquishes it in some way, as by releasing the prisoner, dismissing charges, paroling the prisoner, or by the expiration of the prisoner's sentence, none of which have happened in this case. Doc. 18 at 17. The whole idea of § 3623 is for a federal inmate to complete his federal sentence in state custody, maintaining the primary jurisdiction until the end of the sentence.

**Release.** 18 U.S.C. § 3624 is entitled "Release of a prisoner." It states that a "prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment less any time credited toward the service of the prisoner's sentence as provided in subsection (b)." 18 U.S.C. § 3624(a). Mr. Hanson has not been released from his federal term of imprisonment.

**Custody.** 18 U.S.C. § 3621(a) provides, "A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed or earlier released for satisfactory behavior pursuant to the provisions of section 3624." 18 U.S.C. § 3621(a). As a legal matter, custody is distinct from place of imprisonment, as can be seen by the juxtaposition of § 3621(a) and § 3621(b). Mr. Hanson was improperly moved to Oklahoma State Penitentiary (OSP) under the auspices of a statute, 18 U.S.C. § 3623, that does not authorize such a move. Mr. Hanson's legal custody remains with the Bureau

of Prisons. *See, e.g., Elwell v. Fisher*, 716 F.3d 477, 481-82 (8th Cir. 2013) (noting transfer of physical custody or control of defendant does not terminate primary jurisdiction); *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990). The position that § 3623 allows BOP to transfer prisoners (like Mr. Hanson) who are not nearing the end of their federal sentence cannot be squared with 18 U.S.C. § 3621(a), which provides that federal prisoners "shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed," or § 3621(b), which gives BOP unreviewable authority to "designate the place of [a federal] prisoner's imprisonment."

Section 3621(a) does contain an exception for release from federal custody before expiration of the term imposed: "A person who has been sentenced to a term of imprisonment . . .shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." Thus, the only exception for early release is under § 3624—which covers areas such as good time credits and placement in a halfway house but not release to state custody—*not* § 3623. Section 3623 cannot mean what the defendants say it means as it would render § 3621(a) a nullity. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted); *accord Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879). The tension between sections 3621 and 3623 cannot mean that section 3621 is simply to be ignored. Section 3623 does not apply to Mr. Hanson because section 3623 provides an orderly procedure for transferring a qualifying

6

prisoner to State custody at the end of his federal sentence, and Mr. Hanson is not at the end of his federal sentence.

This all can be seen from the statute's text, structure, purpose, and legislative history. Indeed, it is easy to see the purpose and meaning of § 3623 in its proper framework, and easy to see the statutory framework does not fit Mr. Hanson's transfer to OSP. And it all tracks with "BOP's longstanding operational understanding." Doc. 18 at 18.

## II.  Statutory Construction and *Loper Bright*.

The Magistrate Judge took the position that *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), vitiated the import and relevance of the BOP Program Statement on which Mr. Hanson relied. *See* Doc. 18 at 18-19. But *Loper Bright* does not require ignoring the BOP Program Statement. Rather, the Supreme Court simply held that courts must exercise independent judgment rather than defer outright to agency interpretations when a statute is ambiguous. In exercising that judgment, *Loper Bright* allows courts interpreting statutes to "seek aid from the interpretations of those responsible for implementing [them]." *Loper Bright*, 603 U.S. at 394. *Accord Ctr. for Biological Diversity v. United States Env't Prot. Agency*, 129 F.4th 1266, 1272 (10th Cir. 2025).

Specifically, *Loper Bright* affirmed that deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944), continues to apply. *See Loper Bright*, 603 U.S. at 394-95. Under still-standing *Skidmore* deference, "'interpretations and opinions' of the relevant agency, 'made in pursuance of official duty' and 'based upon . . . specialized experience,' 'constitute a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance,' even on legal questions." *Loper Bright*, 603 U.S. at

7

388 (quoting *Skidmore*, 323 U.S. at 139-40) (ellipses in *Loper Bright* and brackets in *Loper Bright*).

And although "[a]n agency's interpretation of a statute 'cannot bind a court,' [it] may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.'" *Loper Bright*, 603 U.S. at 402 (quoting *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98, n. 8 (1983)). Under *Loper Bright* and *Skidmore*, "'[t]he weight of such a judgment in a particular case'. . . would 'depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 140). Further, agency "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Loper Bright*, 603 U.S. at 394 (citing *Skidmore*, 323 U.S. at 140 and *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 549 (1940)). Thus, even under *Loper Bright*, the court must "pay careful attention to the judgment of the agency." *3484, Inc. v. Nat'l Lab. Rels. Bd.*, No. 24-9511, 2025 WL 1367252, at *4 (10th Cir. May 12, 2025) (discussing *Loper Bright* and quoting *Rieth-Riley Constr. Co., Inc. v. NLRB*, 114 F.4th 519, 529 (6th Cir. 2024)).

Under the guise of conducting an "independent assessment," Doc. 18 at 19, the Magistrate Judge ignored the clear commands of *Skidmore* and *Loper Bright*. Particularly, the BOP Program Statement on which Mr. Hanson relies, *see* Doc. 2, Exh. 3¸ simply reiterates longstanding and consistent BOP policy going back to at least 2001 and

8

supporting Mr. Hanson's position. *See* BOP Policy Statement 5140.35, *Transfer of a Prisoner to State Custody Prior to Release from the Federal Sentence*, Sept. 12, 2001 (rescinded). The Magistrate Judge failed to give the BOP's interpretation of 18 U.S.C. § 3623 the proper weight and careful attention it deserved even under *Loper Bright.*

### III. Minimal Due Process Regarding Mr. Hanson's Transfer to OSP.

In his petition/complaint, Mr. Hanson noted that when the United States District Court for the Western District of Louisiana dismissed Mr. Hanson's complaint without prejudice as unripe because BOP Director Lothrop had not yet officially decided to follow Attorney General Bondi's directive regarding Mr. Hanson, Mr. Hanson and his counsel did not receive notice of the decision and opportunity to be heard to re-urge/amend his pleading once the decision was made. *See* Doc. 2 at 12-13. Instead, Mr. Hanson was whisked away to Oklahoma over the weekend and counsel did not receive notice until after the fact (Sunday, March 2, 2025). As a result, Mr. Hanson had to file the instant action in this Court instead.

The Magistrate Judge's Findings and Recommendation states Mr. Hanson's "due process arguments must be carefully parsed" but then fails to engage with the specific, serious scenario described. Doc. 18 at 15. Some minimal due process must attach. As Justice O'Connor stated in the context of clemency proceedings, a "prisoner under a death sentence remains a living person and consequently has an interest in his life." *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288–89 (1998) (O'Connor, J., concurring in part and concurring in the judgment).

### IV. Respondents' Waiver.

After Mr. Hanson's state resentencing in 2006, the federal government and the State

of Oklahoma understood that Mr. Hanson would likely never be returned to the State of Oklahoma, as Detainer Action Letters to state authorities stated "The above named prisoner has been transferred to USP-Pollock. Tentative release date at this time is N/A LIFE." *See, e.g.,* Doc. 2, Exh. 2. The Magistrate Judge's Findings and Recommendation points to criminal/appellate proceedings, but fails to engage with the fact that for over sixteen years, from 2006 until 2022, the State of Oklahoma neglected to take any action to acquire primary or physical custody of Mr. Hanson. Had Oklahoma intended to execute Mr. Hanson promptly, despite his federal sentence, they would have attempted to retain or regain primary jurisdiction of him after his resentencing.

**V.     Conclusion.**

For all the reasons presented in Mr. Hanson's pleadings, the Court should not adopt the Magistrate Judge's Findings and Recommendation (Doc. 18), but rather grant Mr. Hanson's intertwined petition for writ of habeas corpus and complaint for declaratory relief (Doc. 2) and/or grant his motion for stay of Execution (Doc. 17) and order further briefing. The public interest is in close examination of the instant matter.

Respectfully submitted,

*s/ Thomas D. Hird*
THOMAS D. HIRD, OBA # 13580
Research & Writing Specialist
Office of the Federal Public Defender
Western District of Oklahoma
Capital Habeas Unit
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
(405) 609-5975 (phone)
(405) 609-5976 (fax)
E-mail: Tom_Hird@fd.org


COUNSEL FOR PETITIONER,
JOHN FITZGERALD HANSON


Certificate of Service

I hereby certify that on the 22nd day of May, 2025, I electronically transmitted the attached document to the Clerk of Court using ECF System for filing, which effects service upon all counsel of record.

*s/ Thomas D. Hird*
Thomas D. Hird