FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

June 6, 2025

_____

Christopher M. Wolpert
Clerk of Court

JOHN FITZGERALD HANSON,

    Petitioner - Appellant,

v.

CHRISTE QUICK, Warden; STEVEN HARPE, Director of the Oklahoma Department of Corrections; DANON COLBERT, Acting Regional Director, U.S. Department of Justice, Federal Bureau of Prisons; WILLIAM W. LOTHROP, Acting Director, U.S. Department of Justice, Federal Bureau of Prisons,

    Respondents - Appellees.

No. 25-7044
(D.C. No. 6:25-CV-00081-RAW-JAR)
(E.D. Okla.)

_____

# ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

_____

Before **HARTZ**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

_____

With his execution date approaching, John Fitzgerald Hanson seeks to appeal the district court's judgment denying his claims challenging his physical custody in an Oklahoma prison.[1] We conclude that he needs a certificate of appealability (COA) to

___

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The Office of the Federal Public Defender for the Western District of Oklahoma is appointed to represent Mr. Hanson effective *nunc pro tunc* to the date the notice of appeal was filed in this matter. *See* 18 U.S.C. § 3599.

appeal the denial of any of his claims, and that he has not shown a COA is warranted for any claim. We therefore deny a COA and dismiss this matter.

I.

Mr. Hanson committed a series of crimes in 1999, and he ultimately faced prosecution in both federal and state court. The federal prosecution came first. At the end of it, Mr. Hanson received a life sentence.[2] While serving the federal life sentence, he received the death penalty in an Oklahoma murder prosecution. The Oklahoma Court of Criminal Appeals affirmed the death sentence in 2009.

Since his initial arrest, Mr. Hanson has spent the vast majority of his time in a federal facility. In 2022, the Oklahoma Attorney General requested that the Federal Bureau of Prisons (BOP) transfer him to state custody. A federal statute governs these types of requests:

> The Director of the Bureau of Prisons shall order that a prisoner who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to an official detention facility within such State prior to his release from a Federal prison facility if—
>
> > (1) the transfer has been requested by the Governor or other executive authority of the State;
> >
> > (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and
> >
> > (3) the Director finds that the transfer would be in the public interest.

---

[2] Mr. Hanson also received a consecutive term of 984 months in the federal case.

18 U.S.C. § 3623.  A BOP Regional Director denied the 2022 transfer request, finding that Mr. Hanson's "transfer to state authorities for state execution is not in the public interest."  R. at 36.

The Oklahoma Attorney General made another transfer request in 2025.  This time the Acting BOP Director found that transferring Mr. Hanson to Oklahoma's custody was in the public interest, and the transfer quickly followed.  Mr. Hanson remains in custody at the Oklahoma State Penitentiary.  His execution is scheduled for June 12, 2025.

From Oklahoma, Mr. Hanson began the action underlying these proceedings by filing a "petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for declaratory and injunctive relief."  R. at 6 (formatting modified).  The document presented, as relevant here, three claims for relief—a request for a writ of habeas corpus, an allegation of an *ultra vires* violation of § 3623, and a claim that Oklahoma had waived jurisdiction over Mr. Hanson by not trying to obtain custody of him for many years before its 2022 transfer request.[3]  The district court denied relief.

## II.

Mr. Hanson seeks a COA to appeal the denial of his claim explicitly requesting a habeas writ.  But he proceeds as if he needs no COA to appeal the denial of the claims alleging an *ultra vires* violation of § 3623 and alleging Oklahoma waived jurisdiction over him.  (Mr. Hanson calls these two claims "the injunctive relief claims," COA Appl.

---

[3] The document also presented a claim for declaratory relief, but Mr. Hanson has abandoned that claim.  *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

3

& Opening Br. at 1, and we will too.) We conclude he needs a COA to appeal the injunctive relief claims.

Unless a prisoner receives a COA, he may not appeal from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). We cannot overlook the COA requirement because it is "a jurisdictional prerequisite" to our ruling "on the merits of appeals from habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). So the first question is whether Mr. Hanson can appeal any of his claims without a COA.

He cannot. The district court's judgment is undoubtedly a final order. We ask, then, whether it resolved "the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention." *Harbison v. Bell*, 556 U.S. 180, 183 (2009). It did. Each of Mr. Hanson's claims challenged the legality of his present confinement in an Oklahoma prison.

It does not matter that Mr. Hanson labelled only one of his claims as a habeas claim. To decide how to characterize the injunctive relief claims, we look to the relief sought rather than the labels attached to them. *See United States v. Springer*, 875 F.3d 968, 974 (10th Cir. 2017). What relief did the claims seek? The end of Mr. Hanson's physical confinement in an Oklahoma prison. That relief is available only through a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of

4

habeas corpus"). And so Mr. Hanson needs a COA to appeal the injunctive relief claims as well as the claim explicitly seeking habeas relief.

To obtain a COA, Mr. Hanson must make "a substantial showing of the denial of a constitutional right." § 2253(c)(2). In other words, he must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). With this standard in hand, we turn to Mr. Hanson's arguments.

Mr. Hanson urges us to grant a COA to appeal the district court's habeas ruling because reasonable jurists could debate whether the "court erred in holding that the government had met all the transfer requirements of 18 U.S.C. § 3623." COA Appl. & Opening Br. at 12 (formatting modified). This argument does not allow us to grant a COA because it alleges only a *statutory* violation, not a *constitutional* violation. *See* § 2253(c)(2); *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2006) (recognizing that "a COA cannot issue when the habeas petitioner has shown the denial of only a statutory right"); *United States v. Gordon*, 172 F.3d 753, 754 (10th Cir. 1999) ("Congress, in enacting § 2253(c)(2), differentiated between the type of petition that can be filed and the type that can be appealed.").

Mr. Hanson next argues that reasonable jurists could debate the district court's view "that the BOP's transfer decision is unreviewable." COA Appl. & Opening Br. at 25. This boils down to an argument that the district court applied the wrong standard to review his claimed statutory violation. The argument therefore makes no attempt to

5

show that his "petition states a valid claim of the denial of a *constitutional* right." *Slack*, 529 U.S. at 478 (emphasis added).

Mr. Hanson's arguments supporting his *ultra vires* claim allege only a violation of § 3623, not a violation of a constitutional right.[4] For that reason, a COA is unavailable. *See Taylor*, 454 F.3d at 1079.

Although the claim alleging Oklahoma waived jurisdiction over him invokes a constitutional provision (the Fourteenth Amendment's Due Process Clause), it still falls short of the low bar for a COA. Mr. Hanson's petition alleged that, following the imposition of his death sentence, Oklahoma returned him to federal custody and then waited 16 years (until 2022) before trying to regain physical custody of him. This "lack of interest," the petition concluded, "was equivalent to a pardon or commutation of his sentence and a waiver of jurisdiction." R. at 24. And before us, he argues that "it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath" of Oklahoma's inaction. COA Appl. & Opening Br. at 45. But he cites no authority finding a waiver of jurisdiction or a due-process violation under even remotely similar circumstances. Nor does he account for Oklahoma's efforts to defend the judgment against him in both state and federal proceedings over several years following the imposition of his death sentence. Reasonable jurists would not find the district court's denial of this claim debatable.

---

[4] In his petition, Mr. Hanson's *ultra vires* claim included an argument that his transfer violated his due-process rights, R. at 22–23, but he has abandoned that argument, *see Tran*, 355 F.3d at 1266.

6

III.

Mr. Hanson needs a COA to appeal the denial of any of his claims. We deny a COA and dismiss this matter.[5] We deny as moot Mr. Hanson's motion for a stay of execution.

                      Entered for the Court

                      CHRISTOPHER M. WOLPERT, Clerk

---

[5] This decision was circulated to all active judges of this court. No judge requested a poll on the questions Mr. Hanson has presented. As a result, no en banc consideration is warranted or available.